Exhibit 1

<table>
<tr><td>DISTRICT COURT, EAGLE COUNTY, COLORADO<br>885 Chambers Avenue<br>P.O. Box 597<br>Eagle, CO 81631</td><td>DATE FILED: March 18, 2020 4:27 PM<br>FILING ID: 35DAD63DCF360<br>CASE NUMBER: 2020CV30064<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>Plaintiff: STONE CREEK BUSINESS CENTER, LLLP, a Colorado limited liability limited partnership<br><br>Defendant: STONE CREEK-COLORADO, LLC, a Delaware limited liability company; MIKHAIL KAMINSKI, an individual; CBRE, INC., a Delaware corporation; and PRESCIENT CAPITAL PARTNERS, LTD., a Wisconsin corporation</td><td>Case No.: 2020CV30064<br><br>Division: 3</td></tr>
<tr><td>Attorneys for Plaintiff:<br>Robert N. Gregory (No. 42560)<br>West Huntley Gregory PC<br>P.O. Box 588<br>Breckenridge, CO 80424<br>Phone Number: (970) 453-2901<br>E-mail: bob@brecklaw.com</td><td></td></tr>
<tr><td colspan="2">FIRST AMENDED SUMMONS</td></tr>
</table>

THE PEOPLE OF THE STATE OF COLORADO TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned and required to file with the clerk of this court an answer or other response to the attached complaint. If service of the summons and complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the summons and complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.

If you fail to file your answer or other response to the complaint in writing within the applicable time period, judgment by default may be entered against you by the court for the relief demanded in the complaint without further notice.

Dated: March 18, 2020.

WEST HUNTLEY GREGORY PC

*s/ Robert N. Gregory*

By: ______________________________

Robert N. Gregory (No. 42560)

*In accordance with C.R.C.P. 121 § 1-26(7), a printed copy of this document with original signature(s) is maintained by West Huntley Gregory PC and will be made available for inspection by other parties or the Court upon request.*

<table>
<tr><td>DISTRICT COURT, EAGLE COUNTY, COLORADO<br>885 Chambers Avenue<br>P.O. Box 597<br>Eagle, CO 81631</td><td>DATE FILED: March 18, 2020 4:27 PM<br>FILING ID: 35DAD63DCF360<br>CASE NUMBER: 2020CV30064<br><br>▲ COURT USE ONLY ▲</td></tr>
<tr><td>Plaintiff: STONE CREEK BUSINESS CENTER, LLLP, a Colorado limited liability limited partnership<br><br>Defendant: STONE CREEK-COLORADO, LLC, a Delaware limited liability company; MIKHAIL KAMINSKI, an individual; CBRE, INC., a Delaware corporation; and PRESCIENT CAPITAL PARTNERS, LTD., a Wisconsin corporation</td><td>Case No.: 2020CV30064<br><br>Division: 3</td></tr>
<tr><td>Attorneys for Plaintiff:<br>Robert N. Gregory (No. 42560)<br>West Huntley Gregory PC<br>P.O. Box 588<br>Breckenridge, CO 80424<br>Phone Number: (970) 453-2901<br>E-mail: bob@brecklaw.com</td><td></td></tr>
<tr><td colspan="2">FIRST AMENDED COMPLAINT</td></tr>
</table>

Plaintiff, Stone Creek Business Center, LLLP, by and through counsel, West Huntley Gregory PC, states its First Amended Complaint against the defendants as follows:

1. Plaintiff, Stone Creek Business Center, LLLP ("Plaintiff"), is a Colorado limited liability limited partnership with an address of 8151 S. Peninsula Drive, Littleton, CO 80120.

2. Defendant, Stone Creek-Colorado, LLC ("SCC"), is a Delaware limited liability company registered to conduct business in Colorado, with an address of 1942 Broadway St., Ste. 314C, Boulder, CO 80302.

3. Defendant, Mikhail Kaminski ("Kaminski"), a/k/a Matthew Kaminski, a/k/a M.G. Kaminski, is an individual with an address of 75 Fairhope Ave, Excelsior, MN 55331.

4. Defendant, CBRE, Inc. ("CBRE"), is a Delaware corporation with an address of 400 South Hope Street, 25th Floor, Los Angeles, CA 90071.

5. Defendant, Prescient Capital Partners, Ltd. ("Prescient"), is a Wisconsin corporation with an address of 440 Wells Street, P.O. Box 180673, Delafield, WI 53018.

6. This action is based upon a contract to be performed in, and real property located in, Eagle County, Colorado. Accordingly, this Court has jurisdiction over the Defendants and venue is appropriate in this Court pursuant to C.R.C.P. Rule 98.

## GENERAL ALLEGATIONS

7. Plaintiff owned a commercial property comprising approximately 20,316 square feet, located at 40800 Highway 6, Avon, Colorado 81620, legally described as:

> LOT 5, EAGLE-VAIL COMMERCIAL SERVICE CENTER, FIRST AMENDMENT, LOTS 2 THROUGH 6, BLOCK 2, ACCORDING TO THE PLAT RECORDED JULY 19, 1995 IN BOOK 671 AT PAGE 542, COUNTY OF EAGLE, STATE OF COLORADO,

(the "Property").

8. Plaintiff and CBRE entered into an exclusive right to sell listing contract ("Listing Agreement") on June 5, 2017, which provided that CBRE, through brokers Paul Kluck and Daniel Close, would act as seller's agent. The Listing Agreement is attached hereto as **Exhibit A**.

9. Plaintiff, as Seller, and K Capital, LLC, as Buyer, entered into a contract for the purchase and sale of the Property ("Contract") on July 12, 2018 with a purchase price of $3,500,000. K Capital, LLC subsequently assigned the Contract to SCC prior to the closing of the sale. The Contract is attached hereto as **Exhibit B**.

10. Upon information and belief, Kaminski was the sole member of K Capital, LLC and is the sole member of SCC.

11. Upon information and belief, SCC was created on August 28, 2018, for the sole purpose of holding real estate for the benefit of Kaminski.

12. SCC was originally registered as a Colorado limited liability company, but was converted to a Delaware limited liability company the following day, on August 29, 2018.

13. Kaminski represented himself throughout the course of the transaction on the Property as one and the same with SCC, and the unity of interest between SCC and Kaminski revealed that the purchase was being made in pursuit of Kaminski's own affairs.

14. SCC is an alter ego of Kaminski.

15. The closing of the sale ("Closing") occurred on or about September 12, 2018.

16. As a condition of the sale, SCC requested that Plaintiff provide seller financing for a portion of the purchase price. Seller agreed to carry a secured promissory note in the amount of $1,140,000 ("Note"), upon the terms that the Property would serve as collateral for the Note, the Note would accrue annual interest at 10% and mature on September 7, 2019. The Note is attached hereto as **Exhibit C.**

17. Upon information and belief, SCC and Kaminski's attorney prepared the "Seller Financing Documents", which included the Note and a Membership Interest Pledge Agreement.

18. SCC and Kaminski provided the Seller Financing Documents on September 4, 2018, three days before Closing.

19. When the Seller Financing Documents were provided to Plaintiff by CBRE, Plaintiff inquired with CBRE whether the documents "look clean, and to our advantage?" CBRE responded "Yes, I think it's pretty straightforward". See Email attached hereto as **Exhibit D.**

20. In the same email exchange, Plaintiff also requested that several changes be made to the Note, including a request that the jurisdiction be changed to Eagle County, Colorado. CBRE represented that SCC agreed to Plaintiff's requested changes. The final draft of the Note provided to Seller at Closing, however, did not reflect the changes to which SCC purportedly agreed.

21. In spite of Plaintiff's belief that it was being granted a promissory note secured by a security interest in the Property itself, the version of the Note executed by SCC purported to limit Plaintiff's security to a 100% membership interest in SCC. SCC did not grant a deed of trust to Seller, as is customary in a commercial real estate transaction with a seller carry.

22. CBRE never advised Plaintiff, before or after receipt of the Note, that it should consult an attorney to seek advice regarding the structure of the seller financing, nor did CBRE advise Plaintiff it should obtain a deed of trust on the Property to secure its Note.

23. The Note, in Paragraph 16, provided that the Lender (i.e. Plaintiff) would escrow $168,000 of the sale proceeds to reflect a seller concession offered to SCC prior to Closing. In the event the escrowed funds were released to Plaintiff, this amount would be applied first to any outstanding interest, and then to the principal balance. The escrowed funds were released to Plaintiff on or

about September 25, 2018.

24. The Note, in Paragraph 3, required SCC to make monthly interest only payments in the amount of $5,000, with the remaining principal balance on the Note due on or before September 7, 2019. In spite of the release to Plaintiff of the escrowed funds, the parties carried on with the mutual belief that the interest only payments were still due each month. SCC made the first interest only payment in October 2018, but subsequently failed to make all of its remaining interest only payments.

25. After the first payment default, Plaintiff inquired with Kaminski why the payment was not made and when it should be expected. Kaminski responded with a litany of excuses and promises that the payment would be made, and that SCC would make good on its obligations under the Note.

26. This pattern continued for many months. SCC would default on its payment, Plaintiff would inquire regarding the status, and Kaminski would promise that the check is in the mail, or the wire was coming, with several variations of the same theme.

27. On or about April 22, 2019, SCC provided a bad check to Plaintiff in the amount of $5,000, which was returned due to insufficient funds.

28. Compelled by the concern that SCC and Kaminski never intended to satisfy the Note on or before September 7, 2019, or at the very least would be unable to, Plaintiff conducted additional due diligence, and discovered that on or about March 19, 2019, SCC borrowed $3,025,000 from Prescient, secured with a deed of trust on the Property.

29. Upon information and belief, Prescient was aware of the Note's existence, and SCC and Kaminski's financial obligation under the Note, before providing the $3,025,000 loan to SCC and Kaminski.

30. SCC never informed Plaintiff of this significant additional encumbrance on the Property.

31. SCC failed to make its "final payment" on the Note on September 7, 2019.

32. Plaintiff mailed, via email and certified mail, a Notice of Default on September 9, 2019.

33. SCC and Kaminski responded to the Notice of Default with more promises to pay and represented that Kaminski was attempting to refinance, which would allow him to pay off the Note.

34. SCC and Kaminski are still in default on the Note and have made no payments since November 2018.

35. To the extent that SCC and Kaminski consciously and deliberately pursued a concerted and common plan, design and course of conduct and action, expressly or impliedly, the execution of which common plan or design was done tortiously or otherwise wrongfully, as described elsewhere in this Complaint, SCC and Kaminski are jointly and severally liable with each other for one another's tortious and otherwise wrongful acts.

**FIRST CLAIM FOR RELIEF**
**(Alter Ego – Piercing the Corporate Veil)**

36. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

37. SCC and Kaminski have disregarded the corporate structure of SCC and made it a mere instrumentality for the transaction of Kaminski's own affairs.

38. There is such a unity of interest and ownership that the separate personalities of the SCC and Kaminski does not exist.

39. To adhere to the fiction of the corporate entity of SCC would promote injustice or protect fraud.

40. Plaintiff submits and requests that the corporate structure of SCC be disregarded by the Court and Kaminski be held jointly and severally liable for all claims set forth against SCC herein.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract - Promissory Note – SCC and Kaminski)**

41. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

42. SCC and Kaminski executed and delivered to Plaintiff a Secured Promissory Note dated September 7, 2018, in the principal sum of $1,140,000.00 ("Note").

43. SCC and Kaminski failed to make monthly payments under the Note and failed to make final payment of the remaining principal and interest on or before September 7, 2019.

44. SCC and Kaminski are in material default of the Note.

45. Plaintiff performed its part of the Note and the Contract in every particular.

46. Plaintiff satisfied all conditions precedent to suit.

47. Plaintiff is entitled to damages in an amount to be proven at trial, plus interest at the default rate of 14% per annum from the date of default, and all reasonable costs and expenses, including attorney's fees.

48. In the alternative, Plaintiff is entitled to a decree from the Court that Plaintiff shall be granted a 100% membership interest in Stone Creek-Colorado LLC, along with possession of the Property.

## THIRD CLAIM FOR RELIEF
## (Fraud and Misrepresentation – SCC and Kaminski)

49. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

50. Upon information and belief, SCC and Kaminski made false representations regarding Kaminski's identity and SCC and Kaminski's ability to meet its financial obligations under the Note, which induced Plaintiff to sell the Property to SCC and Kaminski.

51. Upon information and belief, Kaminski concealed his identity as principal of multiple failed business entities, which are currently and have previously been defendants in multiple lawsuits involving financial claims across several jurisdictions.

52. The concealment of facts was material.

53. SCC and Kaminski made these representations knowing them to be false.

54. SCC and Kaminski made the representations with the intent that Plaintiff rely on them.

55. Plaintiff relied on SCC and Kaminski's false representations to its detriment.

56. Due to the nature of the transaction, Plaintiff's reliance upon SCC and Kaminski's false representations was justified.

57. Plaintiff's reliance induced by SCC and Kaminski caused damage to Plaintiff as set forth herein.

FOURTH CLAIM FOR RELIEF

**(Breach of the Covenant of Good Faith and Fair Dealing - SCC and Kaminski)**

58. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

59. Plaintiff and SCC were parties to a Contract.

60. The Contract provided that SCC would pay a portion of the purchase price by satisfying the Note in one year.

61. The Contract contemplated that the Note would be secured by a security interest in the Property itself.

62. Rather than performing on the agreement in good faith, SCC and Kaminski presented a Note with a fundamentally altered term, which allowed SCC and Kaminski to project the appearance to future creditors that the Property was unencumbered by the Note.

63. SCC and Kaminski subsequently granted another note and deed of trust to Prescient Capital Partners in the amount of $3,025,000, thus substantially overleveraging the Property.

64. SCC and Kaminski's effective bait and switch was inconsistent with the Plaintiff's reasonable expectations under the Contract and a violation of the implied covenant of good faith and fair dealing.

65. This violation caused damage to Plaintiff as set forth herein.

FIFTH CLAIM FOR RELIEF

**(Unjust Enrichment – SCC and Kaminski)**

66. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

67. SCC and Kaminski received a benefit in the form of possession, ownership and equity in the Property.

68. SCC and Kaminski received the benefit at Plaintiff's expense.

69. The circumstances created by SCC and Kaminski prior to and after the Closing make it unjust for either SCC or Kaminski to retain the benefit of their purported interest in the Property without commensurate compensation.

## SIXTH CLAIM FOR RELIEF
## (Constructive Trust – SCC, Kaminski and Prescient)

70. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

71. A constructive trust is a remedial device designed to prevent unjust enrichment. *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737–38 (Colo. 1991) (*citing* G. Palmer, 1 Law of Restitution, § 1.3 at 12 (1978)).

72. In general, "a constructive trust is imposed ... because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." Restatement (Second) of Trusts, ch. 12, introductory note at 326 (1959). The doctrine of constructive trusts is extremely flexible. *Page v. Clark*, 592 P.2d at 792, 799 (Colo. 1979).

73. SCC and Kaminski would profit by a wrong and would be unjustly enriched if SCC were permitted to keep the Property without imposing the encumbrance contemplated by the Note.

74. Plaintiff asserts a constructive trust that relates back to the Closing on September 12, 2018.

75. Plaintiff's constructive trust is prior to Prescient's deed of trust recorded March 19, 2019.

76. Plaintiff requests an order and decree from the Court granting it a constructive trust, first in priority, against the Property in the amount of the unpaid portion of the purchase price, plus interest, costs, and attorney's fees.

## SEVENTH CLAIM FOR RELIEF
## (Equitable Lien – SCC, Kaminski and Prescient)

77. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

78. A vendor of land has an equitable lien thereon for the unpaid portion of the purchase price. *Wiley v. Lininger*, 119 Colo. 497 (Colo. 1949).

79. Plaintiff asserts an equitable lien, which relates back to the Closing of the Property on September 12, 2018.

80. Plaintiff's equitable lien is prior to Prescient's deed of trust recorded March 19, 2019.

81. Plaintiff requests an order and decree from the Court granting it an equitable lien, first in priority, against the Property in the amount of the unpaid portion of the purchase price, plus interest, costs, and attorney's fees.

EIGHTH CLAIM FOR RELIEF
**(Promissory Estoppel - SCC and Kaminski)**

82. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

83. SCC and Kaminski made a promise to Plaintiff in the form of the Contract, the Note, and subsequent promises, verbally and in writing, to pay the Note in full.

84. SCC and Kaminski should reasonably have expected that the Contract, the Note, and subsequent promises to pay would induce action or forbearance by Plaintiff.

85. Plaintiff in fact reasonably relied on SCC and Kaminski's promises to Plaintiff's detriment.

86. The Contract and the Note must be enforced to prevent injustice.

**NINTH CLAIM FOR RELIEF**
**(Bad Check – SCC and Kaminski)**

87. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

88. On or about April 22, 2019, SCC provided a check in the amount of $5,000 for payment of its interest only payments pursuant to the Note.

89. The check was returned on or about May 1, 2019 due to insufficient funds. A copy of the returned check is attached hereto as **Exhibit E.**

90. Pursuant to C.R.S. § 13-21-109, Plaintiff is entitled to recovery of its damages, costs and attorney fees related to SCC's actions.

## TENTH CLAIM FOR RELIEF
**(Breach of Contract – CBRE)**

91. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

92. CBRE entered into a listing agreement ("Listing Agreement") with Plaintiff.

93. The Listing Agreement provided that CBRE owed many contractual duties to Plaintiff, including but not limited to the following:

> 5.1.3. Disclosing to Seller adverse material facts actually known by Broker;
>
> 5.1.4. Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond the expertise of Broker;
>
> 5.1.6. Keeping Seller fully informed regarding the transaction;

As the Seller's Agent, CBRE owed the following additional duties to Plaintiff:

> 6.1. Promoting the interests of Seller with the utmost good faith, loyalty and fidelity;
>
> 6.3. Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.

94. CBRE breached contractual duties it owed to Plaintiff under the Listing Agreement by:

> A. failing to properly advise Plaintiff regarding the transaction;
>
> B. failing to advise Plaintiff to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond CBRE's expertise;

C. failing to keep Plaintiff fully informed regarding the transaction;

D. failing to promote Plaintiff's interests with the utmost good faith, loyalty and fidelity; and

E. failing to counsel Plaintiff as to material risks of the transaction that were actually known, or should have been known, by CBRE.

95. CBRE's failures caused Plaintiff damages in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty – CBRE)**

96. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

97. CBRE owed a fiduciary duty to Plaintiff as its Seller's Agent.

98. CBRE failed to meet the fiduciary duty it owed to Plaintiff as Seller's Agent by:

A. failing to properly advise Plaintiff regarding the transaction;

B. failing to advise Plaintiff to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond CBRE's expertise;

C. failing to keep Plaintiff fully informed regarding the transaction;

D. failing to promote the interest of the Plaintiff with the utmost good faith, loyalty and fidelity; and

E. failing to counsel Plaintiff as to material risks of the transaction that were actually known, or should have been known, by CBRE.

99. CBRE's failure caused Plaintiff damages in an amount to be proven at trial.

## TWELFTH CLAIM FOR RELIEF
**(Unjust Enrichment – CBRE)**

100. Plaintiff re-alleges and incorporates its previous allegations herein by reference.

101. CBRE received the benefit of a commission upon the Closing of the Property in the amount of $210,000.

102. CBRE's commission was paid upon Plaintiff's belief that CBRE had fully performed its obligations under the Listing Agreement.

103. This benefit to CBRE came at Plaintiff's expense.

104. The circumstances, that CBRE breached its duty under the Listing Agreement and its fiduciary duty to Plaintiff, make it unjust for CBRE to retain the benefit of its commission.

105. Plaintiff requests compensation for CBRE's unjust enrichment in an amount to be proven at trial.

WHEREFORE, Plaintiff, Stone Creek Business Center, LLLP, respectfully requests that the Court enter judgment in its favor and against Defendant, Stone Creek-Colorado, LLC, Mikhail Kaminski and CBRE as follows:

a. Awarding Plaintiff damages against SCC and Kaminski, jointly and severally, in an amount to be determined at trial, including interest at the rate of 14% per annum from the date of default, costs and attorney's fees;

b. Awarding Plaintiff a 100% membership interest in Stone Creek-Colorado, LLC;

c. Granting Plaintiff an order and decree for a constructive trust, first in priority, against the Property;

d. Granting Plaintiff an order and decree for an equitable lien, first in priority, against the Property;

e. Awarding Plaintiff damages against CBRE, along with a return of the commission paid to CBRE upon the Closing of the Property; and

f. Such other relief as the Court deems just and proper.

Dated: March 18, 2020.

WEST HUNTLEY GREGORY PC

*s/ Robert N. Gregory*

By: ______________________________

Robert N. Gregory (No. 42560)

Plaintiff's Address:
8151 S. Peninsula Drive
Littleton, CO 80120

*In accordance with C.R.C.P. 121 § 1-26(7), a printed copy of this document with original signature(s) is maintained by West Huntley Gregory PC, and will be made available for inspection by other parties or the Court upon request.*

**CBRE**
CBRE, Inc.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

DATE FILED: March 18, 2020 4:27 PM
FILING ID: 35DAD63DCF360
CASE NUMBER: 2020CV30064

The printed portions of this form, except **differentiated additions**, have been approved by the Colorado Real Estate Commission. (LC50-6-16) (Mandatory 1-17)

THIS IS A BINDING CONTRACT. THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

Compensation charged by real estate brokerage firms is not set by law. Such charges are established by each real estate brokerage firm.

DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE BUYER AGENCY, SELLER AGENCY OR TRANSACTION-BROKERAGE.

# EXCLUSIVE RIGHT-TO-SELL LISTING CONTRACT

☒ SELLER AGENCY ☐ TRANSACTION-BROKERAGE

Date: June 5, 2017

1. **AGREEMENT.** Seller and Brokerage Firm enter into this exclusive, irrevocable contract (Seller Listing Contract) and agree to its provisions. Broker, on behalf of Brokerage Firm, agrees to provide brokerage services to Seller. Seller agrees to pay Brokerage Firm as set forth in this Seller Listing Contract.

2. **BROKER AND BROKERAGE FIRM.**

☒ 2.1. **Multiple-Person Firm.** If this box is checked, the individual designated by Brokerage Firm to serve as the broker of Seller and to perform the services for Seller required by this Seller Listing Contract is called Broker. If more than one individual is so designated, then references in this Seller Listing Contract to Broker include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm or to any other brokers employed or engaged by Brokerage Firm who are not so designated.

☐ 2.2. **One-Person Firm.** If this box is checked, Broker is a real estate brokerage firm with only one licensed natural person. References in this Seller Listing Contract to Broker or Brokerage Firm mean both the licensed natural person and brokerage firm who serve as the broker of Seller and perform the services for Seller required by this Seller Listing Contract.

3. **DEFINED TERMS.**

3.1. **Seller:** Stone Creek Business Center Ltd

3.2. **Brokerage Firm:** CBRE, Inc.

3.3. **Broker:** Paul Kluck and Daniel Close

3.4. **Property.** The Property is the following legally described real estate in the County of Eagle, Colorado:

SUBDIVISION: EAGLE-VAIL COMM SERVICE CENTER BLOCK: 2 LOT: 5 BK-0671 PG-0542 MAP 07-19-95 BK-0692 PG-0551 RAC 04-17-96 BK-0723 PG-0055 WD 09-01-96

known as No. 40800 Hwy. 6, Eagle, CO
Street Address City State Zip

together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

3.5. Sale; Lease

3.5.1. A Sale is the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease. It also includes an agreement to transfer any ownership interest in an entity which owns the Property.

☒ 3.5.2. If this box is checked, Seller **also grants to** ~~authorizes~~ Broker **an Exclusive Right-To-Lease** ~~to negotiate leasing~~ the Property. Lease of the Property or Lease means any agreement between the Seller and a tenant to create a tenancy or leasehold interest in the Property.

3.6. **Listing Period.** The Listing Period of this Seller Listing Contract begins on July 1, 2017, and continues through the earlier of (1) completion of the Sale of the Property or (2) June 30, 2018, and any written extensions (Listing Period).



EXHIBIT A

Broker must continue to assist in the completion of any Sale or Lease for which compensation is payable to Brokerage Firm under § 7 of this Seller Listing Contract.

**3.7. Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation "N/A" or the word "Deleted" means not applicable. The abbreviation "MEC" (mutual execution of this contract) means the date upon which both parties have signed this Seller Listing Contract.

**3.8. Day; Computation of Period of Days, Deadline.**

**3.8.1. Day.** As used in this Seller Listing Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings as applicable).

**3.8.2. Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified, the first day is excluded and the last day is included, e.g., three days after MEC. If any deadline falls on a Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline ☒ **Will** ☐ **Will Not** be extended to the next day that is not a Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

**4. BROKERAGE RELATIONSHIP.**

**4.1.** If the Seller Agency box at the top of page 1 is checked, Broker represents Seller as Seller's limited agent (Seller's Agent). If the Transaction-Brokerage box at the top of page 1 is checked, Broker acts as a Transaction-Broker.

**4.2. In-Company Transaction – Different Brokers.** When Seller and buyer in a transaction are working with different brokers, those brokers continue to conduct themselves consistent with the brokerage relationships they have established. Seller acknowledges that Brokerage Firm is allowed to offer and pay compensation to brokers within Brokerage Firm working with a buyer.

**4.3. In-Company Transaction – One Broker.** If Seller and buyer are both working with the same broker, Broker must function as:

**4.3.1. Seller's Agent.** If the Seller Agency box at the top of page 1 is checked, the parties agree the following applies:

**4.3.1.1. Seller Agency Only.** Unless the box in § 4.3.1.2 (**Seller Agency Unless Brokerage Relationship with Both**) is checked, Broker represents Seller as Seller's Agent and must treat the buyer as a customer. A customer is a party to a transaction with whom Broker has no brokerage relationship. Broker must disclose to such customer Broker's relationship with Seller.

☒ **4.3.1.2. Seller Agency Unless Brokerage Relationship with Both.** If this box is checked, Broker represents Seller as Seller's Agent and must treat the buyer as a customer, unless Broker currently has or enters into an agency or Transaction-Brokerage relationship with the buyer, in which case Broker must act as a Transaction-Broker.

**4.3.2. Transaction-Broker.** If the Transaction-Brokerage box at the top of page 1 is checked, or in the event neither box is checked, Broker must work with Seller as a Transaction-Broker. A Transaction-Broker must perform the duties described in § 5 and facilitate sales transactions without being an advocate or agent for either party. If Seller and buyer are working with the same broker, Broker must continue to function as a Transaction-Broker.

**5. BROKERAGE DUTIES.** Brokerage Firm, acting through Broker, as either a Transaction-Broker or a Seller's Agent, must perform the following **Uniform Duties** when working with Seller:

**5.1.** Broker must exercise reasonable skill and care for Seller, including, but not limited to the following:

**5.1.1.** Performing the terms of any written or oral agreement with Seller;

**5.1.2.** Presenting all offers to and from Seller in a timely manner regardless of whether the Property is subject to a contract for Sale;

**5.1.3.** Disclosing to Seller adverse material facts actually known by Broker;

**5.1.4.** Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond the expertise of Broker;

**5.1.5.** Accounting in a timely manner for all money and property received; and

**5.1.6.** Keeping Seller fully informed regarding the transaction.

**5.2.** Broker must not disclose the following information without the informed consent of Seller:

**5.2.1.** That Seller is willing to accept less than the asking price for the Property;

**5.2.2.** What the motivating factors are for Seller to sell the Property;

**5.2.3.** That Seller will agree to financing terms other than those offered;

**5.2.4.** Any material information about Seller unless disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing; or

**5.2.5.** Any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property.

**5.3.** Seller consents to Broker's disclosure of Seller's confidential information to the supervising broker or designee for the purpose of proper supervision, provided such supervising broker or designee does not further disclose such information without consent of Seller, or use such information to the detriment of Seller.

**5.4.** Brokerage Firm may have agreements with other sellers to market and sell their property. Broker may show alternative properties not owned by Seller to other prospective buyers and list competing properties for sale.

5.5. Broker is not obligated to seek additional offers to purchase the Property while the Property is subject to a contract for Sale.

5.6. Broker has no duty to conduct an independent inspection of the Property for the benefit of a buyer and has no duty to independently verify the accuracy or completeness of statements made by Seller or independent inspectors. Broker has no duty to conduct an independent investigation of a buyer's financial condition or to verify the accuracy or completeness of any statement made by a buyer.

5.7. Seller understands that Seller is not liable for Broker's acts or omissions that have not been approved, directed or ratified by Seller.

5.8. When asked, Broker ☒ Will ☐ Will Not disclose to prospective buyers and cooperating brokers the existence of offers on the Property and whether the offers were obtained by Broker, a broker within Brokerage Firm or by another broker.

**6. ADDITIONAL DUTIES OF SELLER'S AGENT.** If the Seller Agency box at the top of Page 1 is checked, Broker is Seller's Agent, with the following additional duties:

6.1. Promoting the interests of Seller with the utmost good faith, loyalty and fidelity;

6.2. Seeking a price and terms that are set forth in this Seller Listing Contract; and

6.3. Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.

**7. COMPENSATION TO BROKERAGE FIRM; COMPENSATION TO COOPERATIVE BROKER.** Seller agrees that any Brokerage Firm compensation that is conditioned upon the Sale of the Property will be earned by Brokerage Firm as set forth herein without any discount or allowance for any efforts made by Seller or by any other person in connection with the Sale of the Property.

7.1. **Amount.** In consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows:

7.1.1. **Sale Commission.** (1) six percent (6%) of the gross purchase price or (2) N/A, in U.S. dollars.

7.1.2. **Lease Commission.** If the box in § 3.5.2 is checked, Brokerage Firm will be paid a fee equal to (1) N/A% of the gross rent under the lease, or (2) In the event there is an outside broker involved, Seller shall pay Brokerage Firm a real estate commission equal to seven percent (7%) of the total net lease consideration; in the event there are no brokers involved other than Paul Kluck and Daniel Close, Seller shall pay Brokerage Firm a real estate commission equal to five percent (5%) of the total net lease consideration, in U.S. dollars, payable as follows: one half upon lease execution and one half upon lease commencement.

7.1.3. **Other Compensation.** N/A

7.2. **Cooperative Broker Compensation.** Brokerage Firm offers compensation to outside brokerage firms, whose brokers are acting as:

☒ Buyer's Agents: Negotiable% of the gross sales price or Negotiable on a lease in U.S. dollars.

☒ Transaction-Brokers: Negotiable of the gross sales price or Negotiable on a lease in U.S. dollars.

7.3. **When Earned.** Such commission is earned upon the occurrence of any of the following:

7.3.1. Any Sale of the Property within the Listing Period by Seller, by Broker or by any other person;

7.3.2. Broker finding a buyer who is ready, willing and able to complete the Sale or Lease as specified in this Seller Listing Contract; or

7.3.3. Any Sale (or Lease if § 3.5.2 is checked) of the Property within 90 calendar days after the Listing Period expires (Holdover Period) (1) to anyone with whom Broker negotiated, and (2) whose name was submitted, in writing, to Seller by Broker during the Listing Period (Submitted Prospect). Provided, however, Seller ☒ Will ☐ Will Not owe the commission to Brokerage Firm under this § 7.3.3 if a commission is earned by another licensed real estate brokerage firm acting pursuant to an exclusive agreement entered into during the Holdover Period and a Sale or Lease to a Submitted Prospect is consummated. If no box is checked in this § 7.3.3, then Seller does not owe the commission to Brokerage Firm.

7.4. **When Applicable and Payable.** The commission obligation applies to a Sale made during the Listing Period or any extension of such original or extended term. The commission described in § 7.1.1 is payable at the time of the closing of the Sale, or, if there is no closing (due to the refusal or neglect of Seller) then on the contracted date of closing, as contemplated by § 7.3.1 or § 7.3.3, or upon fulfillment of § 7.3.2 where the offer made by such buyer is not accepted by Seller.

**8. LIMITATION ON THIRD-PARTY COMPENSATION.** Neither Broker nor Brokerage Firm, except as set forth in § 7, will accept compensation from any other person or entity in connection with the Property without the written consent of Seller. Additionally, neither Broker nor Brokerage Firm is permitted to assess or receive mark-ups or other compensation for services performed by any third party or affiliated business entity unless Seller signs a separate written consent for such services.

**9. OTHER BROKERS' ASSISTANCE, MULTIPLE LISTING SERVICES AND MARKETING.** Seller has been advised by Broker of the advantages and disadvantages of various marketing methods, including advertising and the use of multiple listing services (MLS) and various methods of making the Property accessible by other brokerage firms (e.g., using lock boxes, by-appointment-only showings, etc.), and whether some methods may limit the ability of another broker to show the Property. After having been so advised, Seller has chosen the following:

9.1. **MLS/Information Exchange.**

9.1.1. The Property: ☐ Will ☒ Will Not be submitted to one or more MLS and ☒ Will ☐ Will Not be submitted to one or more property information exchanges. If submitted, Seller authorizes Broker to provide timely notice of any status change to such MLS and information exchanges. Upon transfer of deed from Seller to buyer, Seller authorizes Broker to provide sales information to such MLS and information exchanges.

9.1.2. Seller authorizes the use of electronic and all other marketing methods except: **None**

9.1.3. Seller further authorizes use of the data by MLS and property information exchanges, if any.

9.1.4. The Property Address ☒ Will ☐ Will Not be displayed on the Internet.

9.1.5. The Property Listing ☒ Will ☐ Will Not be displayed on the Internet.

9.2. Property Access. Access to the Property may be by:

☒ Manual Lock Box ☐ Electronic Lock Box

☐ ______________________________

Other instructions: **None**

9.3. Broker Marketing. The following specific marketing tasks will be performed by Broker: **brochure, signage, property exchange services, email marketing campaigns**

**10. SELLER'S OBLIGATIONS TO BROKER; DISCLOSURES AND CONSENT.**

**10.1. Negotiations and Communication.** Seller agrees to conduct all negotiations for the Sale of the Property only through Broker, and to refer to Broker all communications received in any form from real estate brokers, prospective buyers, tenants, or any other source during the Listing Period of this Seller Listing Contract.

**10.2. Advertising.** Seller agrees that any advertising of the Property by Seller (e.g., Internet, print and signage) must first be approved by Broker

**10.3. No Existing Listing Agreement.** Seller represents that Seller ☐ Is ☒ Is Not currently a party to any listing agreement with any other broker to sell the Property.

**10.4. Ownership of Materials and Consent.** Seller represents that all materials (including all photographs, renderings, images or other creative items) supplied to Broker by or on behalf of Seller are owned by Seller, except as Seller has disclosed in writing to Broker. Seller is authorized to and grants to Broker, Brokerage Firm and any MLS (that Broker submits the Property to) a nonexclusive irrevocable, royalty-free license to use such material for marketing of the Property, reporting as required and the publishing, display and reproduction of such material, compilation and data. This license survives the termination of this Seller Listing Contract.

**10.5. Colorado Foreclosure Protection Act.** The Colorado Foreclosure Protection Act (Act) generally applies if (1) the Property is residential (2) Seller resides in the Property as Seller's principal residence (3) Buyer's purpose in purchase of the Property is not to use the Property as Buyer's personal residence and (4) the Property is in foreclosure or Buyer has notice that any loan secured by the Property is at least thirty days delinquent or in default. If all requirements 1, 2, 3 and 4 are met and the Act otherwise applies, then a contract, between Buyer and Seller for the sale of the Property, that complies with the provisions of the Act is required. If the transaction is a Short Sale transaction and a Short Sale Addendum is part of the Contract between Seller and Buyer, the Act does not apply. It is recommended that Seller consult with an attorney.

**11. PRICE AND TERMS.** The following Price and Terms are acceptable to Seller:

**11.1. Price.** U.S. $ **3,600,000.00 on a sale and $15.00/SF on a lease**

**11.2. Terms.** ☒ Cash ☐ Conventional ☐ FHA ☐ VA ☐ Other: ____________

**11.3. Loan Discount Points.** **N/A**

**11.4. Buyer's Closing Costs (FHA/VA).** Seller must pay closing costs and fees, not to exceed $**N/A**, that Buyer is not allowed by law to pay, for tax service and **N/A**.

**11.5. Earnest Money.** Minimum amount of earnest money deposit U.S. $**Negotiable** in the form of **Negotiable**.

**11.6. Seller Proceeds.** Seller will receive net proceeds of closing as indicated: ☐ **Cashier's Check** at Seller's expense; ☒ **Funds Electronically Transferred (Wire Transfer)** to an account specified by Seller, at Seller's expense; or ☐ **Closing Company's Trust Account Check.**

**11.7. Advisory: Tax Withholding.** The Internal Revenue Service and the Colorado Department of Revenue may require closing company to withhold a substantial portion of the proceeds of this Sale when Seller either (1) is a foreign person or (2) will not be a Colorado resident after closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption exists.

**12. DEPOSITS.** Brokerage Firm is authorized to accept earnest money deposits received by Broker pursuant to a proposed Sale contract. Brokerage Firm is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the Sale contract.

**13. INCLUSIONS AND EXCLUSIONS.**

**13.1. Inclusions.** The Purchase Price includes the following items (Inclusions):

**13.1.1. Fixtures.** The following items are included if attached to the Property on the date of this Seller Listing Contract, unless excluded under Exclusions (§ 13.2): lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including None ________________ remote controls.

**Other Fixtures:**

If any fixtures are attached to the Property after the date of this Seller Listing Contract, such additional fixtures are also included in the Purchase Price.

**13.1.2. Personal Property.** The following items are included if on the Property, whether attached or not, on the date of this Seller Listing Contract, unless excluded under Exclusions (§ 13.2): storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following are included: ☐ **Water Softeners** ☐ **Smoke/Fire Detectors** ☐ **Carbon Monoxide Alarms** ☐ **Security Systems** ☐ **Satellite Systems** (including satellite dishes); and

The Personal Property to be conveyed at closing must be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except Those of record at time of sale ________________. Conveyance will be by bill of sale or other applicable legal instrument.

**13.1.3. Trade Fixtures.** The following trade fixtures are included: ________________

The Trade Fixtures to be conveyed at closing must be conveyed by Seller, free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except ________________. Conveyance will be by bill of sale or other applicable legal instrument.

**13.1.4. Parking and Storage Facilities.** ☐ **Use Only** ☐ **Ownership** of the following parking facilities: ________________; and ☐ **Use Only** ☐ **Ownership** the following storage facilities:________.

**13.1.5. Water Rights.** The following legally described water rights:

Any water rights must be conveyed by_______ deed or other applicable legal instrument. The Well Permit # is__ ________.

**13.1.6. Growing Crops.** The following growing crops:

**13.2. Exclusions.** The following are excluded (Exclusions):_

**14. TITLE AND ENCUMBRANCES.** Seller represents to Broker that title to the Property is solely in Seller's name. Seller must deliver to Broker true copies of all relevant title materials, leases, improvement location certificates and surveys in Seller's possession and must disclose to Broker all easements, liens and other encumbrances, if any, on the Property, of which Seller has knowledge. Seller authorizes the holder of any obligation secured by an encumbrance on the Property to disclose to Broker the amount owing on said encumbrance and the terms thereof. In case of Sale, Seller agrees to convey, by a special warranty ___ deed, only that title Seller has in the Property. Property must be conveyed free and clear of all taxes, except the general taxes for the year of closing.

All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) must be paid by Seller and released except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows: None ________.

The Property is subject to the following leases and tenancies: None ________________.

If the Property has been or will be subject to any governmental liens for special improvements installed at the time of signing a Sale contract, Seller is responsible for payment of same, unless otherwise agreed.

**15. EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense, unless the parties agree in writing to a different arrangement, a current commitment and an owner's title insurance policy in an amount equal to the Purchase Price as specified in the Sale contract, or if this box is checked, ☐ **An Abstract of Title** certified to a current date.

**16. ASSOCIATION ASSESSMENTS.** Seller represents that the amount of the regular owners' association assessment is currently payable at $ N/A ________________ per N/A ________ and that there are no unpaid regular or special assessments against the Property except the current regular assessments and except N/A ________________. Seller

agrees to promptly request the owners' association to deliver to buyer before date of closing a current statement of assessments against the Property.

**17. POSSESSION.** Possession of the Property will be delivered to buyer as follows: **Negotiable** subject to leases and tenancies as described in § 14.

**18. MATERIAL DEFECTS, DISCLOSURES AND INSPECTION.**

**18.1. Broker's Obligations.** Colorado law requires a broker to disclose to any prospective buyer all adverse material facts actually known by such broker including but not limited to adverse material facts pertaining to the title to the Property and the physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which are required by law to be disclosed. These types of disclosures may include such matters as structural defects, soil conditions, violations of health, zoning or building laws, and nonconforming uses and zoning variances. Seller agrees that any buyer may have the Property and Inclusions inspected and authorizes Broker to disclose any facts actually known by Broker about the Property.

**18.2. Seller's Obligations.**

**18.2.1. Seller's Property Disclosure Form.** Disclosure of known material latent (not obvious) defects is required by law. Seller ☐ **Agrees** ☒ **Does Not Agree** to provide a Seller's Property Disclosure form completed to Seller's current actual knowledge.

**18.2.2. Lead-Based Paint.** Unless exempt, if the improvements on the Property include one or more residential dwellings for which a building permit was issued prior to January 1, 1978, a completed Lead-Based Paint Disclosure (Sales) form must be signed by Seller and the real estate licensees, and given to any potential buyer in a timely manner.

**18.2.3. Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater or appliance, a fireplace, or an attached garage and one or more rooms lawfully used for sleeping purposes (Bedroom), Seller understands that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code, prior to offering the Property for sale or lease.

**18.2.4. Condition of Property.** The Property will be conveyed in the condition existing as of the date of the sales contract or lease, ordinary wear and tear excepted, unless Seller, at Seller's sole option, agrees in writing to any repairs or other work to be performed by Seller.

**19. RIGHT OF PARTIES TO CANCEL.**

**19.1. Right of Seller to Cancel.** In the event Broker defaults under this Seller Listing Contract, Seller has the right to cancel this Seller Listing Contract, including all rights of Brokerage Firm to any compensation if the Seller Agency box is checked. Examples of a Broker breach include, but are not limited to (1) abandonment of Seller, (2) failure to fulfill all material obligations of Broker and (3) failure to fulfill all material Uniform Duties (§ 5) or, if the Seller Agency box at the top of page 1 is checked, the failure to fulfill all material Additional Duties of Seller's Agent (§ 6). Any rights of Seller that accrued prior to cancellation will survive such cancellation.

**19.2. Right of Broker to Cancel.** Brokerage Firm may cancel this Seller Listing Contract upon written notice to Seller that title is not satisfactory to Brokerage Firm. Although Broker has no obligation to investigate or inspect the Property, and no duty to verify statements made, Brokerage Firm has the right to cancel this Seller Listing Contract if any of the following are unsatisfactory (1) the physical condition of the Property or Inclusions, (2) any proposed or existing transportation project, road, street or highway, (3) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants, or (4) any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property. Additionally, Brokerage Firm has the right to cancel this Seller Listing Contract if Seller or occupant of the Property fails to reasonably cooperate with Broker or Seller defaults under this Seller Listing Contract. Any rights of Brokerage Firm that accrued prior to cancellation will survive such cancellation.

**20. FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received will be (1) ☒ 100% will be paid to Seller; (2) ☐ divided between Brokerage Firm and Seller, one-half to Brokerage Firm but not to exceed the Brokerage Firm compensation agreed upon herein, and the balance to Seller; (3) ☐ Other ______________________. If no box is checked in this Section, choice (1), 100% paid to Seller applies Any forfeiture of payment under this section will not reduce any Brokerage Firm compensation owed, earned and payable under § 7.

**21. COST OF SERVICES AND REIMBURSEMENT.** Unless otherwise agreed upon in writing, Brokerage Firm must bear all expenses incurred by Brokerage Firm, if any, to market the Property and to compensate cooperating brokerage firms, if any. Neither Broker nor Brokerage Firm will obtain or order any other products or services unless Seller agrees in writing to pay for them promptly when due (examples: surveys, radon tests, soil tests, title reports, engineering studies, property inspections). Unless otherwise agreed, neither Broker nor Brokerage Firm is obligated to advance funds for Seller. Seller must reimburse Brokerage Firm for payments made by Brokerage Firm for such products or services authorized by Seller.

**22. DISCLOSURE OF SETTLEMENT COSTS.** Seller acknowledges that costs, quality, and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

**23. MAINTENANCE OF THE PROPERTY.** Neither Broker nor Brokerage Firms is responsible for maintenance of the Property nor are they liable for damage of any kind occurring to the Property, unless such damage is caused by their negligence or intentional misconduct.

**24. NONDISCRIMINATION.** The parties agree not to discriminate unlawfully against any prospective buyer because of the race, creed, color, sex, sexual orientation, marital status, familial status, physical or mental disability, handicap, religion, national origin or ancestry of such person.

**25. RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Seller acknowledges that Broker has advised that this document has important legal consequences and has recommended consultation with legal and tax or other counsel before signing this Seller Listing Contract.

**26. MEDIATION.** If a dispute arises relating to this Seller Listing Contract, prior to or after closing, and is not resolved, the parties must first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, will terminate in the event the entire dispute is not resolved within 30 calendar days of the date written notice requesting mediation is delivered by one party to the other at the other party's last known address.

**27. ATTORNEY FEES.** In the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court must award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

**28 ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.) **None**

**29. ATTACHMENTS.** The following are a part of this Seller Listing Contract: **Addendum to Listing/Commission Agreement and Definitions of Working Relationships.**

**30. NO OTHER PARTY OR INTENDED BENEFICIARIES.** Nothing in this Seller Listing Contract is deemed to inure to the benefit of any person other than Seller, Broker and Brokerage Firm.

**31. NOTICE, DELIVERY AND CHOICE OF LAW.**

**31.1. Physical Delivery.** All notices must be in writing, except as provided in § 31.2. Any document, including a signed document or notice, delivered to the other party to this Seller Listing Contract, is effective upon physical receipt. Delivery to Seller is effective when physically received by Seller, any signator on behalf of Seller, any named individual of Seller or representative of Seller.

**31.2. Electronic Delivery.** As an alternative to physical delivery, any document, including signed document or written notice, may be delivered in electronic form only by the following indicated methods: ☒ **Facsimile** ☒ **E-mail** ☒ **Internet.** If no box is checked, this § 31.2 is not applicable and § 31.1 governs notice and delivery. Documents with original signatures will be provided upon request of any party.

**31.3. Choice of Law.** This Seller Listing Contract and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in this state for property located in Colorado.

**32. MODIFICATION OF THIS SELLER LISTING CONTRACT.** No subsequent modification of any of the terms of this Seller Listing Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by all parties.

**33. COUNTERPARTS.** This Seller Listing Contract may be executed by each of the parties, separately, and when so executed by all the parties, such copies taken together are deemed to be a full and complete contract between the parties.

**34. ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties, and any prior agreements, whether oral or written, have been merged and integrated into this Seller Listing Contract.

**35. COPY OF CONTRACT.** Seller acknowledges receipt of a copy of this Seller Listing Contract signed by Broker, including all attachments.

Brokerage Firm authorized Broker to execute this Seller Listing Contract on behalf of Brokerage Firm.

Seller's Name: Stone Creek Business Center Ltd

Seller's Signature ______ 6/12/2017 Date

Address: P.O. Box 769
Littleton, CO 80160

Phone No.: ______

Fax No.: ______

Electronic Address: ______

Broker's Name: Paul Kluck and Daniel Close

Broker's Signature ______ Date

Address: 8390 East Crescent Parkway, Suite 300
Greenwood Village, Colorado 80111

Phone No.: 720.528.6300

Fax No.: 720.528.6333

Electronic Address: paul.kluck@cbre.com / daniel.close@cbre.com

Brokerage Firm's Name: CBRE, Inc.

Address: 8390 East Crescent Parkway, Suite 300
Greenwood Village, Colorado 80111

Phone No.: 720.528.6300

Fax No.: 720.528.6333

Electronic Address: ______

**CBRE**
CBRE, Inc.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

# Addendum to Listing/Commission Agreement

The following provisions are incorporated into and made part of the Exclusive Right-to-Sell Listing Contract, ~~Exclusive Right to Lease, or other listing contract~~ or commission agreement between CBRE, Inc. ("Broker") and STONE CREEK BUSINESS CENTER LTD ("Owner"), dated JUNE 5, 2017 ("Contract"), relating to the following real property: 40800 HWY 6, EAGLE, CO ("Property"). (In the event of a subleasing agreement, "Owner" shall include a sublessor, and paragraph 2 shall not apply.)

1. Owner agrees to disclose to Broker and to prospective purchasers/lessees/sublessees any and all information which Owner has regarding the condition of the Property, including, but not limited to, the presence and location of asbestos, PCB transformers, other toxic, hazardous or contaminated substances, and underground storage tanks in, on, or about the Property.

2. Owner represents that it is the owner of the Property. In the event that a sale of the Property is contemplated, Owner represents that, except as may be set forth below or in an addendum attached hereto, no person or entity who has an ownership interest in the Property is a foreign person as defined in the Foreign Investment in Real Property Tax Act.

3. The commission provided for in the Contract to which this Addendum is attached shall also be paid if (a) Owner contributes or conveys the Property, or any interest therein, to a partnership, joint venture, or other business entity; (b) the Owner is a corporation, partnership or other business entity, and an interest in the business entity is transferred whether by merger, outright purchase or otherwise, in lieu of sale or lease of the Property; or (c) the Property is transferred due to eminent domain or the threat thereof, in which case the commission shall be based on the amount Owner receives from the condemning authority.

4. In the event that Owner fails to make payments within the time limits set forth, then from the date due until paid the delinquent amount shall bear interest at the rate of twelve percent (12%) per annum. In the event of any dispute between Owner and Broker relating to the Property, the Contract or Owner or Broker's performance thereunder, Owner and Broker agree that such dispute shall be resolved by means of binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction. Depositions may be taken and other discovery obtained during such arbitration proceedings to the same extent as authorized in civil judicial proceedings in the state where the office of Broker executing this Contract is located. The arbitrator(s) shall be limited to awarding compensatory damages and shall have no authority to award punitive, exemplary or similar type damages. The prevailing party in the arbitration proceeding shall be entitled to recover its expenses, including the cost of the arbitration proceeding, and reasonable attorneys' fees.

5. If the Contract to which this Addendum is attached relates to a lease of real property, and Owner sells or otherwise disposes of its interest in the Property, then unless the transferee assumes all such obligations in writing, Owner shall remain liable for payment of all commissions provided for in the Contract, including the obligation to pay a commission to Broker in the event that a tenant or subtenant renews, extends, expands or purchases the Property, if such obligations are otherwise a part of the Contract.

6. The parties agree to comply with all applicable federal, state and local laws, regulations, codes, ordinances and administrative orders having jurisdiction over the parties, property or the subject matter of the Contract, including, but not limited to, the 1964 Civil Rights Act and all amendments

This Addendum has not been approved by the Colorado Real Estate Commission. It was prepared by CBRE, Inc.

CBRE
CBRE, Inc.
BROKERAGE AND MANAGEMENT
LICENSED REAL ESTATE BROKER

thereto, the Foreign Investment In Real Property Tax Act, the Comprehensive Environmental Response Compensation and Liability Act, and the Americans With Disabilities Act.

7. Additional provisions: **None**

In the event of any conflict between the terms of this Addendum and the Contract, the terms of this Addendum shall prevail.

**CBRE, Inc.**
Licensed Real Estate Broker

By: [signature]
**Paul Kluck and Daniel Close**

Title: **First Vice President / Vice President**

Date:

OWNER: **Stone Creek Business Center Ltd**

By: [signature]

Title: owners representative

Date: 6/12/2017

Form No. 5491 (CO) Revised 7/09

The printed portions of this form, except *differentiated additions*, have been approved by the Colorado Real Estate Commission. (AE41-6-15) (Mandatory 1-16)

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

# AGREEMENT TO AMEND/EXTEND CONTRACT

Date: *August 29, 2018*

1. This agreement amends the contract dated *July 12, 2018* (Contract) between *Stone Creek Business Center, LLLP* (Seller), and *K Capital, LLC and/or Assigns* (Buyer), relating to the sale and purchase of the following legally described real estate in the County of *Denver*, Colorado:

known as No. *40800 Highway 6, Avon, Colorado*, (Property).
Street Address City State Zip

**NOTE: If the table is omitted, or if any item is left blank or is marked in the "No Change" column, it means no change to the corresponding provision of the Contract. If any item is marked in the "Deleted" column, it means that the corresponding provision of the Contract to which reference is made is deleted.**

2. **§ 3. DATES AND DEADLINES.** [Note: This table may be omitted if inapplicable.]

| Item No. | Reference | Event | Date or Deadline | No Change | Deleted |
|---|---|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | | X | |
| | | **Title** | | | |
| 2 | § 8.1 | Record Title Deadline | | X | |
| 3 | § 8.2 | Record Title Objection Deadline | | X | |
| 4 | § 8.3 | Off-Record Title Deadline | | X | |
| 5 | § 8.3 | Off-Record Title Objection Deadline | | X | |
| 6 | § 8.4 | Title Resolution Deadline | | X | |
| 7 | § 8.6 | Right of First Refusal Deadline | | X | |
| | | **Owners' Association** | | | |
| 8 | § 7.3 | Association Documents Deadline | | X | |
| 9 | § 7.3 | Association Documents Objection Deadline | | X | |
| | | **Seller's Property Disclosure** | | | |
| 10 | § 10.1 | Seller's Property Disclosure Deadline | | X | |
| | | **Loan and Credit** | | | |
| 11 | § 5.1 | Loan Application Deadline | | X | |
| 12 | § 5.2 | Loan Objection Deadline | | X | |
| 13 | § 5.3 | Buyer's Credit Information Deadline | | X | |
| 14 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | | X | |
| 15 | § 5.4 | Existing Loan Documents Deadline | | X | |
| 16 | § 5.4 | Existing Loan Documents Objection Deadline | | X | |
| 17 | § 5.4 | Loan Transfer Approval Deadline | | X | |
| 18 | § 4.7 | Seller or Private Financing Deadline | | X | |
| | | **Appraisal** | | | |
| 19 | § 6.2 | Appraisal Deadline | | X | |
| 20 | § 6.2 | Appraisal Objection Deadline | | X | |
| 21 | § 6.2 | Appraisal Resolution Deadline | | X | |
| | | **Survey** | | | |
| 22 | § 9.1 | New ILC or New Survey Deadline | | X | |
| 23 | § 9.3 | New ILC or New Survey Objection Deadline | | X | |
| 24 | § 9.4 | New ILC or New Survey Resolution Deadline | | X | |

| Item No. | Reference | Event | Date or Deadline | No Change | Deleted |
|---|---|---|---|---|---|
| | | **Inspection and Due Diligence** | | | |
| 25 | § 10.3 | Inspection Objection Deadline | | X | |
| 26 | § 10.3 | Inspection Resolution Deadline | | X | |
| 27 | § 10.5 | Property Insurance Objection Deadline | | X | |
| 28 | § 10.6 | Due Diligence Documents Delivery Deadline | | X | |
| 29 | § 10.6 | Due Diligence Documents Objection Deadline | | X | |
| 30 | § 10.6 | Due Diligence Documents Resolution Deadline | | X | |
| 31 | § 10.6 | Environmental Inspection Objection Deadline CBS2, 3, 4 | | X | |
| 32 | § 10.6 | ADA Evaluation Objection Deadline CBS2, 3, 4 | | X | |
| 33 | § 10.7 | Conditional Sale Deadline | | X | |
| 34 | § 11.1 | Tenant Estoppel Statements Deadline CBS2, 3, 4 | | X | |
| 35 | § 11.2 | Tenant Estoppel Statements Objection Deadline CBS2, 3, 4 | | X | |
| | | **Closing and Possession** | | | |
| 36 | § 12.3 | **Closing Date** | | X | |
| 37 | § 17 | Possession Date | | X | |
| 38 | § 17 | Possession Time | | X | |
| | | | | | |
| | | | | | |

3. Other dates or deadlines set forth in the Contract are changed as follows: *None*

4. Additional amendments:

*The Buyer entity shall be changed to Stone Creek- Colorado, LLC.*

All other terms and conditions of the Contract remain the same.

This proposal expires unless accepted in writing by Seller and Buyer as evidenced by their signatures below and the offering party to this document receives notice of such acceptance on or before *August 31, 2018 12:00 p.m. MDT*.
Date Time

Buyer's Name: *K Capital, LLC and/or Assigns*

[signature] 8/29/18
Buyer's Signature Date

Buyer's Name: ______________________

______________________
Buyer's Signature Date

Seller's Name: *Stone Creek Business Center, LLLP*

[signature] 8/29/2018
Seller's Signature Date

Seller's Name: ______________________

______________________
Seller's Signature Date

The printed portions of this form, except ***differentiated additions***, have been approved by the Colorado Real Estate Commission. (AE41-6-15) (Mandatory 1-16)

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

# AGREEMENT TO AMEND/EXTEND CONTRACT

Date: ***September 4, 2018***

1. This agreement amends the contract dated ***July 12, 2018*** (Contract) between ***Stone Creek Business Center, LLLP*** (Seller), and ***K Capital, LLC and/or Assigns*** (Buyer), relating to the sale and purchase of the following legally described real estate in the County of ***Denver***, Colorado:

known as No. ***40800 Highway 6, Avon, Colorado***, (Property).
Street Address City State Zip

**NOTE: If the table is omitted, or if any item is left blank or is marked in the "No Change" column, it means no change to the corresponding provision of the Contract. If any item is marked in the "Deleted" column, it means that the corresponding provision of the Contract to which reference is made is deleted.**

2. **§ 3. DATES AND DEADLINES.** [**Note:** This table may be omitted if inapplicable.]

| Item No. | Reference | Event | Date or Deadline | No Change | Deleted |
|---|---|---|---|---|---|
| 1 | § 4.3 | Alternative Earnest Money Deadline | | *X* | |
| | | **Title** | | | |
| 2 | § 8.1 | Record Title Deadline | | *X* | |
| 3 | § 8.2 | Record Title Objection Deadline | | *X* | |
| 4 | § 8.3 | Off-Record Title Deadline | | *X* | |
| 5 | § 8.3 | Off-Record Title Objection Deadline | | *X* | |
| 6 | § 8.4 | Title Resolution Deadline | | *X* | |
| 7 | § 8.6 | Right of First Refusal Deadline | | *X* | |
| | | **Owners' Association** | | | |
| 8 | § 7.3 | Association Documents Deadline | | *X* | |
| 9 | § 7.3 | Association Documents Objection Deadline | | *X* | |
| | | **Seller's Property Disclosure** | | | |
| 10 | § 10.1 | Seller's Property Disclosure Deadline | | *X* | |
| | | **Loan and Credit** | | | |
| 11 | § 5.1 | Loan Application Deadline | | *X* | |
| 12 | § 5.2 | Loan Objection Deadline | | *X* | |
| 13 | § 5.3 | Buyer's Credit Information Deadline | | *X* | |
| 14 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | | *X* | |
| 15 | § 5.4 | Existing Loan Documents Deadline | | *X* | |
| 16 | § 5.4 | Existing Loan Documents Objection Deadline | | *X* | |
| 17 | § 5.4 | Loan Transfer Approval Deadline | | *X* | |
| 18 | § 4.7 | Seller or Private Financing Deadline | | *X* | |
| | | **Appraisal** | | | |
| 19 | § 6.2 | Appraisal Deadline | | *X* | |
| 20 | § 6.2 | Appraisal Objection Deadline | | *X* | |
| 21 | § 6.2 | Appraisal Resolution Deadline | | *X* | |
| | | **Survey** | | | |
| 22 | § 9.1 | New ILC or New Survey Deadline | | *X* | |
| 23 | § 9.3 | New ILC or New Survey Objection Deadline | | *X* | |
| 24 | § 9.4 | New ILC or New Survey Resolution Deadline | | *X* | |

| Item No. | Reference | Event | Date or Deadline | No Change | Deleted |
|---|---|---|---|---|---|
| | | **Inspection and Due Diligence** | | | |
| 25 | § 10.3 | Inspection Objection Deadline | | X | |
| 26 | § 10.3 | Inspection Resolution Deadline | | X | |
| 27 | § 10.5 | Property Insurance Objection Deadline | | X | |
| 28 | § 10.6 | Due Diligence Documents Delivery Deadline | | X | |
| 29 | § 10.6 | Due Diligence Documents Objection Deadline | | X | |
| 30 | § 10.6 | Due Diligence Documents Resolution Deadline | | X | |
| 31 | § 10.6 | Environmental Inspection Objection Deadline CBS2, 3, 4 | | X | |
| 32 | § 10.6 | ADA Evaluation Objection Deadline CBS2, 3, 4 | | X | |
| 33 | § 10.7 | Conditional Sale Deadline | | X | |
| 34 | § 11.1 | Tenant Estoppel Statements Deadline CBS2, 3, 4 | | X | |
| 35 | § 11.2 | Tenant Estoppel Statements Objection Deadline CBS2, 3, 4 | | X | |
| | | **Closing and Possession** | | | |
| 36 | § 12.3 | Closing Date | | X | |
| 37 | § 17 | Possession Date | | X | |
| 38 | § 17 | Possession Time | | X | |
| | | | | | |
| | | | | | |

3. Other dates or deadlines set forth in the Contract are changed as follows: ***None***

4. Additional amendments:

***The Seller will escrow $168,000 at closing to reconcile the CAM issues with Sherwin Williams.***

All other terms and conditions of the Contract remain the same.

This proposal expires unless accepted in writing by Seller and Buyer as evidenced by their signatures below and the offering party to this document receives notice of such acceptance on or before ***<u>September 6, 2018 12:00 p.m. MDT</u>***.
Date Time

Buyer's Name: ***Stone Creek- Colorado, LLC***

Buyer's Signature Date

Buyer's Name: ____________________

Buyer's Signature Date

Seller's Name: ***Stone Creek Business Center, LLLP***

9/4/2018

Seller's Signature Date

Seller's Name: ____________________

Seller's Signature Date

# SECURED PROMISSORY NOTE

$1,140,000

Date: September 7, 2018

FOR VALUE RECEIVED, the undersigned, Stone Creek-Colorado, LLC, a Delaware limited liability company ("Borrower"), with an address at 229 Minnetonka Avenue, S Unit 369, Wayzata, MN 55391, promises to pay to the order of Stone Creek Business Center, LLLP, a Colorado limited liability limited partnership, with an address at 8151 S. Peninsula Drive, Littleton, CO 80120 ("Lender"), the principal sum of ONE MILLION ONE HUNDRED FOURTY THOUSAND and NO/100 Dollars ($1,140,000.00), together with interest on the unpaid principal balance of this promissory note (this "Note") at the "Interest Rate" (as defined below) in the amounts and in the manner set forth herein, and any and all other amounts which may be due and payable hereunder or under the Loan Documents (hereinafter defined) from time to time.

1. Term. The term of this Note (the "Loan Term") is one year and shall commence on the date hereof and shall end on September 7, 2019 (the "Maturity Date"). "Loan" shall mean the loan from Lender to Borrower evidenced by this Note.

2. Interest Rate. This Note shall bear interest at a rate equal to ten percent (10%) per annum (the "Interest Rate"). All payments due under this Note shall be applied first against "Lender's Costs," as set forth in Section 13, second against accrued interest and charges under the Loan Documents, and then against the outstanding principal amount due under this Note. The interest hereunder shall be calculated based on a three hundred sixty-five (365) day year.

3. Monthly Payment; Final Payment. Subject to Section 16, the interest under this Note shall be repaid in monthly installments of interest-only payments (the "Monthly Payments"). The first Monthly Payment shall be due and payable on the first day of October 1, 2018, and a Monthly Payment shall be due and payable on the first day of each succeeding month. If not sooner paid, the entire outstanding principal balance and all accrued and unpaid interest, if any, under this Note (the "Final Payment") shall be due and payable on the Maturity Date. This Note shall be due and payable, and Borrower hereby promises to pay the outstanding principal amount of the Note to Lender, together with all accrued interest thereon then remaining unpaid and all other unpaid amounts, charges, fees and expenses outstanding under this Note or under any of the other Loan Documents, on the Maturity Date, and subject to earlier prepayment as provided under Section 4, or as otherwise provided herein or in any other Loan Document.

4. Prepayment. Borrower shall have the right to prepay the entire outstanding principal balance of this Note at any time subject to a prepayment charge of ZERO Dollars ($0.00) to the extent that (a) the prepayment amount is an amount equal to the sum of the indebtedness in its entirety and (b) Borrow is not in default under the terms of this Note or under all other Loan Documents.

5. Security. The indebtedness evidenced by this Note is secured by a Membership Interest Pledge Agreement, dated as of the date hereof (the "Agreement") given by Borrower to Lender, and encumbering 100% of the ownership interest of Borrower (the "Pledged Units"). This Note, the Agreement and any other instruments or documents that evidence or secure the



EXHIBIT

C

indebtedness under this Note are herein collectively called the "Loan Documents", and the terms of all Loan Documents are incorporated into this Note by reference.

6. Late Charge. If any Final Payment under this Note is not made within fifteen (15) days of the date such payment is due and payable (calculated by including the due date), Borrower shall pay to Lender, or to a party designated by Lender, as liquidated damages by reason of such delay in payment, an amount equal to five percent (5%) of the total amount of such delinquent payment (a "Late Charge").

7. Default Rate. From and after the date of the occurrence of any Event of Default and continuing until such Event of Default is fully cured (if Borrower is entitled under this Note to cure such default) or until this Note is paid in full, the Borrower promises to pay interest on the principal balance of this Note then outstanding at the rate (the "Default Rate") equal to (i) the Interest Rate plus four percent (4%) per annum, or (ii) if less, the maximum rate permitted under applicable law.

8. Events of Default. Each of the following shall be an "Event of Default" under this Note: (i) failure to pay when due any principal, interest or other charge payable under this Note or any other Loan Document within thirty (30) days of the date such payment is due and payable (calculated by including the due date); (ii) failure to perform or observe any other covenant or obligation of Borrower under this Note and such default is not completely cured by Borrower within thirty (30) days after notice thereof from Lender specifying such default (provided that if such default cannot reasonably be cured within such thirty (30) day period, no Event of Default shall be deemed to exist if Borrower shall commence to cure such default within such thirty (30) day period and proceed with due diligence to complete such cure; but in any event, such default must be cured within forty five (45) days after Lender's notice); or (iii) the occurrence of an "Event of Default" as defined in any other Loan Document or any other default under any other Loan Document which is not cured within the applicable cure period, if any, provided therein.

9. Remedies. Upon the occurrence of an Event of Default, Lender may, at its option, exercise any one or more of the following remedies: (i) declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest and any other charges or amounts payable under the Loan Documents, to be immediately due and payable, regardless of the Maturity Date; and (ii) pursue any other rights and remedies of Lender under the Loan Documents, applicable law, or otherwise.

10. Waiver by Borrower. Borrower hereby waives diligence, demand, presentment for payment, notice of nonpayment, protest, notice of dishonor and notice of protest, and specifically consent to and waive notice of any renewals, modifications or extensions of this Note, whether in favor of Borrower or any other person or persons, and hereby waive notice of intent to accelerate and notice of acceleration of the indebtedness under this Note, and any defense by reason of extension of time for payment or other indulgence granted by Lender.

11. No Waiver by Lender. No delay, failure or forbearance on the part of Lender in exercising any right, remedy or privilege under this Note or under any other Loan Document shall affect such right, remedy or privilege, nor shall any single or partial exercise thereof or any

abandonment or discontinuance of steps to enforce such a right, remedy or privilege preclude any further exercise thereof or the exercise of any other rights, remedies or privileges under any Loan Document. The rights, remedies and privileges of Lender hereunder are cumulative and not exclusive of any rights, remedies or privileges which Lender may have and may be exercised and enforced alternatively, successively or concurrently, at the sole discretion of Lender. In the event that Charles C. Murphy deceases on or before the Maturity Date, this Note shall transfer to his heirs.

12. Notices. All notices, consents or communications required or permitted to be given under this Note shall be in writing and shall be deemed to have been properly given and received (i) if sent by hand delivery, then upon delivery, (ii) if sent by overnight courier or United States Express Mail, then one (1) day after dispatch, and (iii) if mailed by certified or registered U.S. mail, postage prepaid and return receipt requested, then two (2) days after deposit in the mail. All such notices and communications shall be given to the parties at their respective addresses set forth in this Note, or at such other addresses as either party may designate by notice in accordance with the terms of this Section.

13. Lender's Costs. Borrower agrees to pay all costs, charges and expenses, including reasonable attorneys' fees, to the extent permitted by law, which may be incurred by Lender for the collection of any sums due under the Loan Documents or enforcing any of Lender's rights under the Loan Documents, whether or not suit is filed.

14. Limited Liability. The liability of Borrower for the repayment of the indebtedness evidenced by this Note shall be limited to the security given by Borrower.

15. Consent to Jurisdiction; Waiver; Other Forums.

(a) Any suit, action or proceeding arising out of or relating to this Note or any other Loan Document, or any action or proceeding to execute on or otherwise enforce any judgment arising out of an Event of Default or other default under this Note or any other Loan Document can be brought by Lender in the applicable federal district court or in the state circuit court having jurisdiction for Hennepin County, State of Minnesota (collectively, the "Courts"). By executing and delivering this Note, Borrower, its successors and assigns, hereby irrevocably and unconditionally submit to the non-exclusive personal jurisdiction of the Courts, for any suit, action or proceeding arising out of or relating to this Note or any other Loan Document, and irrevocably and unconditionally agree not to assert in any proceeding before the Courts or any other court or tribunal, by way of motion, as a defense or otherwise, any claim contesting or challenging the personal jurisdiction of the Courts. In addition, Borrower irrevocably waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in the Courts for any suit, action or proceeding arising out of or relating to this Note or any other Loan Document or (ii) any objection that such suit, action or proceeding brought in the Courts has been brought in an inconvenient forum.

(b) Nothing in this Section or in any other Loan Document shall be deemed to preclude Lender from bringing a suit, action or proceeding arising out of or relating to this Note or any other Loan Document in any other jurisdiction.

16. Escrow Agreement. Lender and Borrower have entered into an Escrow Agreement contemporaneously with this Note (the "Escrow Agreement") and the terms of the Escrow Agreement are incorporated herein by reference. Lender has agreed to escrow $168,000.00 pursuant to the terms of the Escrow Agreement (the "Escrowed Funds"). If Borrower is entitled to receive the Escrowed Funds, the Escrowed Funds shall be first released to Lender as payment for any and all unpaid interest that has or would have accrued during the Loan Term and all remaining funds shall be paid to Borrower. Borrower shall have no obligation to make monthly payments pursuant to Section 3 if the Escrowed Funds released to Lender are sufficient to cover payment of all interest due during the Loan Term. In the event of a prepayment by Borrower, Borrower shall receive a credit against the principal of the Note for any unaccrued interest paid by Borrower.

17. Miscellaneous.

(a) This Note shall be governed by and construed in accordance with the laws of the State of Minnesota. The terms of this Note are severable, and if any provision, or the application of any provision, shall be declared invalid or unenforceable, the remaining provisions and all other applications of such provisions shall remain in full force and effect, and shall not be impaired in any way.

(b) This Note may not be amended or modified except by a written agreement signed by Borrower and Lender.

(c) In no event shall payments of interest to Lender or a party designated by Lender exceed the maximum rate or amount permitted to be charged under applicable law. If Lender or a party designated by Lender shall receive any payment that is or would be in excess of the interest or other charge permitted to be charged under applicable law, the portion of any such payment received by Lender or a party designated by Lender in excess of the maximum interest permitted by law shall be credited to the principal balance of the Loan.

(d) Whenever used herein, the terms "Borrower" and "Lender" shall also mean, to the extent applicable, the heirs, successors, legal representatives and assigns of Borrower and Lender, and the term "including" shall mean "including, without limitation." Unless otherwise defined herein, capitalized terms used herein shall have the respective meanings as set forth in the Agreement.

(e) In the event that this Note is mutilated, destroyed, lost or stolen, Borrower shall deliver to Lender in substitution for this Note a new promissory note containing the same terms and conditions as this Note, with a notation thereon of the unpaid principal balance and accrued but unpaid interest. Lender shall furnish to Borrower reasonably satisfactory evidence of the mutilation, destruction, loss or theft of this Note along with

such indemnity against claims based on this Note as may be reasonably required by Borrower.

(f) Time is of the essence of this Note.

(g) This Note and every covenant and agreement herein contained shall be jointly and severally binding upon each party or entity executing this Note as or on behalf of Borrower and its and their heirs, successors, legal representatives and assigns, and shall inure to the benefit of Lender and its successors and assigns.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Borrower has executed and delivered this Note effective as of the date first above written.

**BORROWER:**

Stone Creek-Colorado, LLC, LLC
a Delaware limited liability company

By: ______________________
Name: [illegible]
Title: Chief [illegible]

**ACKNOWLEDGMENT**

STATE OF Minnesota )
) ss.
COUNTY OF Ramsey )

On this 6th day of September, 2018, before me, a Notary Public, in and for said County and State, personally appeared Mikhail Kaminski, known to me to be the person who executed the within instrument, and who stated that he is Manager of Stone Creek-Colorado, LLC, a Delaware limited liability company, and that he executed the same as Manager, for and on behalf of said limited liability company and as the free act and deed of said limited liability company.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal, on the day and year last above written.

[SEAL]

Jeanette L. Rundenza
NOTARY PUBLIC
State of Minnesota
My Commission Expires 1-31-2022

______________________
Notary Public
My Commission Expires: 1/31/2022

# Re: Stone Creek-Colorado, LLC - Seller Financing Documents

From: Close, Daniel @ Greenwood Village (daniel.close@cbre.com)

To: lynnscottmurphy@yahoo.com

Date: Wednesday, September 5, 2018, 11:25 AM MDT

Yes I think it's pretty straightforward

Daniel Close | Vice President
CBRE | Advisory & Transaction Services
Industrial & Logistics
1225 17th Street, Denver CO 80202
T +1 720 528 6342 | C +1 303 946 3285
Daniel.Close@cbre.com | www.cbre.com

---

**From:** Lynn Murphy <lynnscottmurphy@yahoo.com>
**Sent:** Wednesday, September 5, 2018 10:08 AM
**To:** Close, Daniel @ Greenwood Village
**Subject:** Re: Stone Creek-Colorado, LLC - Seller Financing Documents

Does everything else look clean, and to our advantage?

Here's my red-lined version.

On Wednesday, September 5, 2018, 10:58:53 AM MDT, Close, Daniel @ Greenwood Village <Daniel.Close@cbre.com> wrote:

Red line that to 168k and he is ok with your other changes.

Daniel Close | Vice President
CBRE | Advisory & Transaction Services
Industrial & Logistics
1225 17th Street, Denver CO 80202
T +1 720 528 6342 | C +1 303 946 3285
Daniel.Close@cbre.com | www.cbre.com

---

**From:** Lynn Murphy <lynnscottmurphy@yahoo.com>
**Sent:** Wednesday, September 5, 2018 9:20 AM
**To:** Close, Daniel @ Greenwood Village
**Subject:** Re: Stone Creek-Colorado, LLC - Seller Financing Documents

Section 16 indicates $125k

Let's change 15a to indicate an Eagle County jurisdiction.

Thanks,
Lynn

EXHIBIT
tabbies
D

**Cc:** Cory Whiting <cwhiting@nevewebb.com>
**Subject: Stone Creek-Colorado, LLC - Seller Financing Documents**

Mik,

Attached for your review, please see the seller financing documents for the above-referenced matter.

John R. Neve, Esq.
Neve|Webb
6800 France Avenue South, Suite 405
Minneapolis, MN 55435
Main: 952.746.2400
Direct: 952.929.3232
Fax: 952.746.2401
jneve@nevewebb.com

This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately by e-mail at jneve@nevewebb.com or by telephone at 952.746.2400 and delete the message and any attachments from your system.

# Fwd: escrow/carry

From: Close, Daniel @ Greenwood Village (daniel.close@cbre.com)

To: lynnscottmurphy@yahoo.com

Date: Thursday, September 6, 2018, 9:22 AM MDT

Daniel Close | Vice President
CBRE | Advisory & Transaction Services
Industrial & Logistics
1225 17th Street, Denver CO 80202
T +1 720 528 6342 | C +1 303 946 3285
Daniel.Close@cbre.com | www.cbre.com

---

**From:** Mikhail Kaminski <mgkaminski10@gmail.com>
**Sent:** Thursday, September 6, 2018 8:18:01 AM
**To:** Close, Daniel @ Greenwood Village
**Subject:** escrow/carry

Daniel, how about this we up the carry to $1,140,000. at the same 10% he escrows the 168K. I release the entire 168K back to him asap. which leaves me with 60K Left of the interest payments which I make over the course of the year in 5K monthly payments? See attached. for a layout

--
Regards,

Mikhail Kaminski
T 612 360 4900
Mgkaminski10@gmail.com

Screen Shot 2018-09-06 at 10.15.51 AM.png
35kB

WELLS FARGO BANK N.A. 163
P.O. BOX 5247
DENVER, CO 80274

WELLS FARGO

STONE CREEK BUSINESS CENTER LTD
PO BOX 179
LITTLETON CO 80160-0179

ITEMS ENCLOSED: 1

PAGE 1 OF 1 ACCOUNT CHARGED XXXXXX4896 DATE: 05-01-2019

| | REASON FOR NON-PAYMENT | SEQUENCE # | AMOUNT |
|---|---|---|---|
| DEPOSITORY ACCOUNT NUMBER: | XXXXXX4896 | | |
| YOUR ACCOUNT HAS BEEN CHARGED FOR THE FOLLOWING PAPER ITEM(S) RETURNED UNPAID. | | | |
| | NSF-Insuf Funds | 3331336808 | 5,000.00 |
| TOTAL CHARGES FOR PAPER RETURNS | | | 5,000.00 |

EXHIBIT
tabbies
E

TOTAL CHARGES FOR PAPER RETURNS 5,000.00

TOTAL FEES 12.00

SHOULD YOU HAVE ANY QUESTIONS OR REQUIRE ADDITIONAL INFORMATION, PLEASE CALL THE PHONE NUMBER THAT IS LISTED ON YOUR BANK STATEMENT.

WELLS FARGO

## IMPORTANT INFORMATION ABOUT YOUR CONSUMER CHECKING ACCOUNT

### Substitute Checks and Your Rights

***What is a substitute check?***
To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similiar in size to the original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

***What are my rights regarding substitute checks?***
In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You are also entitled to interest on the amount of your refund if your account is an interest - bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other laws. If you use this procedure, you may receive up to $2,500 of your refund (plus interest if you account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) no later than 45 calendar days after we received your claim. We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

***How do I make a claim for a refund?***
If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at 1-800-869-3557. You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include -

- A description of why you have suffered a loss (for example, think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check or the following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, the amount of the check.

©2004 Wells Fargo Bank, N.A.
All rights reserved. Member FDIC.

*122105278*
05/01/2019
3331336808

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

RETURN REASON - A NOT SUFFICIENT FUNDS

E091000019 04/30/2019
999999999999

NSF

STONE CREEK-COLORADO LLC
229 MINNETONKA AVE S UNIT 369
WAYZATA, MN 55391-1999

17-2/910

5120

DATE 1/22/19

PAY TO THE ORDER OF Lynn Murphy $ 5000.00

Five Thousand Dollars 00/100 DOLLARS

usbank.

MEMO

⑆091000022⑆ 104785555228⑈5120

4⑆091000022⑆ 104785555228⑈5120 ⑈0000500000⑈

091000022 04/30/2019
8356914432 RR - A
064000059 05/01/2019
8356914432 RR - A
*122105278* 05/01/2019
3331336808 RR - A

↓Do not endorse or write below this line.↓

ENDORSE HERE

to Linda Murphy

CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT

Linda Murphy

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

4580973058

Security Features

>091000019< 04/30/2019
9999999999999999

| | |
|---|---|
| DISTRICT COURT, EAGLE COUNTY, COLORADO<br>885 Chambers Avenue<br>P.O. Box 597<br>Eagle, CO 81631 | DATE FILED: March 18, 2020 4:27 PM<br>FILING ID: 35DAD63DCF360<br>CASE NUMBER: 2020CV30064 |
| **Plaintiff:** STONE CREEK BUSINESS CENTER, LLLP, a Colorado limited liability limited partnership<br><br>**Defendant:** STONE CREEK-COLORADO, LLC, a Delaware limited liability company; MIKHAIL KAMINSKI, an individual; CBRE, INC., a Delaware corporation; and PRESCIENT CAPITAL PARTNERS, LTD., a Wisconsin corporation | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br>Robert N. Gregory (No. 42560)<br>West Huntley Gregory PC<br>P.O. Box 588<br>Breckenridge, CO 80424<br>Phone Number: (970) 453-2901<br>E-mail: bob@brecklaw.com | Case No.: 2020CV30064<br><br>Division: 3 |

**FIRST AMENDED DISTRICT CIVIL CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, crossclaim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 applies to this case unless (check one box below if this party asserts that C.R.C.P. 16.1 does not apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding; or

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000; or
>
> ☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☐ This party makes a Jury Demand at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Dated: March 18, 2020.

WEST HUNTLEY GREGORY PC

*s/ Robert N. Gregory*

By: ______________________

Robert N. Gregory (No. 42560)

*In accordance with C.R.C.P. 121 § 1-26(7), a printed copy of this document with original signature(s) is maintained by West Huntley Gregory PC, and will be made available for inspection by other parties or the Court upon request.*