IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01413-PAB-GPG

STONE CREEK BUSINESS CENTER, LLLP, a Colorado limited liability limited
partnership,

      Plaintiff,

v.

STONE CREEK-COLORADO, LLC, a Delaware limited liability company,
MIKHAIL KAMINSKI, an individual,
CBRE, INC., a Delaware corporation, and
PRESCIENT CAPITAL PARTNERS, LTD., a Wisconsin corporation,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on Defendants Stone Creek-Colorado, LLC, and

Mikhail Kaminski's Partial Motion to Dismiss, or in the Alternative to Sever Pursuant to

F.R.C.P. § 21 and Transfer Venue [Docket No. 37] and Prescient Capital Partners,

Ltd.'s Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

[Docket No. 41].  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

      Stone Creek Business Center ("plaintiff") owned commercial property in Avon,

Colorado.  Docket No. 35 at 2, ¶ 7.  Plaintiff entered into a listing contract with

defendant CBRE, Inc. ("CBRE") to sell the property.  Docket No. 35 at 2–3, ¶ 8.

Plaintiff entered into a contract on July 12, 2018 with K Capital, LLC, ("K Capital") to sell

_____

      [1] The facts are taken from plaintiff's second amended complaint [Docket No 35]
and are presumed to be true for the purposes of this order.

the property for $3,500,000.  *Id.* at 3, ¶ 9.  K Capital later assigned the contract to Stone

Creek-Colorado, LLC ("SCC").  *Id.*  Defendant Mikhail Kaminski is the only member of

both K Capital and SCC, which Mr. Kaminski created for the purpose of holding real

estate for his benefit.  *Id.*, ¶¶ 10–11.  Mr. Kaminski "represented himself" in the

transaction for the property.  *Id.*, ¶ 13.  SCC is an alter ego of Mr. Kaminski.  *Id.*, ¶ 14.

As a condition of the sale, the parties agreed that plaintiff would provide seller

financing in the form of a secured promissory note for $1,140,000, with the property to

serve as collateral.  *Id.* at 3–4, ¶ 16.  The parties further agreed that the note would

accrue annual interest at 10%, with a maturity date of September 7, 2019.  *Id.*  SCC

and Mr. Kaminski's lawyer prepared seller financing documents, which included the

promissory note.  *Id.* at 4, ¶¶ 17–18.  When plaintiff received the documents from

CBRE, it asked CBRE whether the documents "look clean, and to [plaintiff's]

advantage?," to which CBRE responded, "Yes, I think it's pretty straightforward."  *Id.*

¶ 19.  In the same email exchange, plaintiff requested that several changes be made to

the promissory note, including that the "jurisdiction" be changed to Eagle County,

Colorado, to which CBRE stated that SCC agreed.  *Id.*, ¶ 20.  The final draft to the note

that was provided to plaintiff at closing, however, did not reflect these changes.  *Id.*

Rather, the version of the note that SCC executed limited plaintiff's security to a 100%

membership interest in SCC, rather than a security interest in the property itself.  *Id.* at

4–5, ¶ 21.  Nor did SCC provide plaintiff with a deed of trust.  *Id.*  CBRE did not advise

plaintiff that it should consult an attorney, seek advice regarding the financing structure,

or obtain a deed of trust on the property as security for the note.  *Id.* at 5, ¶ 22.

The promissory note provided that plaintiff would escrow $168,000 of the sale proceeds to reflect a "seller concession" for SCC prior to closing and, in the event that these funds were released to plaintiff, they would be applied, first, to any outstanding interest and then to the principal balance. *Id.*, ¶ 23. The escrowed funds were released to plaintiff on September 25, 2018. *Id.* The note provided that SCC would make monthly interest-only payments of $5,000, with the remaining balance of the note due on or before September 7, 2019. *Id.*, ¶ 24. Even though the escrowed funds were released to plaintiff, the parties "carried on with the mutual belief" that the interest-only payments were still due monthly. *Id.* SCC only made the first month's payment. *Id.* After SCC defaulted, plaintiff asked Mr. Kaminski why payment had not been made. *Id.*, ¶ 25. Mr. Kaminski responded with excuses and promises that payment was forthcoming, in a pattern that recurred for many months. *Id.* 5–6, ¶¶ 25–26. On or about April 22, 2019, SCC provided a "bad check" to plaintiff for $5,000, which was returned for insufficient funds. *Id.* at 6, ¶ 27.

Plaintiff eventually conducted additional due diligence and learned that, on or about March 19, 2019, SCC borrowed $3,025,000 from defendant Prescient Capital Partners, Ltd. ("Prescient"), which it secured with a deed of trust on the property. *Id.*, ¶ 28. Prescient was aware of the promissory note and SCC and Mr. Kaminski's financial obligation before providing loan to SCC and Mr. Kaminski, yet SCC did not inform plaintiff of the additional encumbrance on the property. *Id.*, ¶¶ 29–30.

SCC failed to make what would have been its final payment on the note on September 7, 2019, and, as a result, plaintiff sent SCC and Mr. Kaminski a notice of

default on September 9, 2019, to which SCC and Mr. Kaminski responded, promising to pay and representing that Mr. Kaminski was attempting to refinance, which would allow him to pay off the promissory note.  *Id.*, ¶¶ 31–33.  SCC and Mr. Kaminski are still in default and have made no payment since November 2018.  *Id.* at 7, ¶ 34.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss

Dismissal of a claim under Rule 12(b)(6) is appropriate where a party fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. (8)(a)(2).  Rule 8(a)'s "short and plain statement" mandate requires that a party allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (ellipses omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  *Bryson*, 534 F.3d at 1286.

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

### B.  Motion to Sever

Rule 21 of the Federal Rules of Civil Procedure governs misjoinder and nonjoinder of parties, providing that "[t]he court may [ ] sever any claim against a party." Fed. R. Civ. P. 21.  Severance under Rule 21 creates a separate case.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991).  A court has broad discretion in deciding whether to sever parties or claims.  *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995).  "The cases make it clear that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in Rule 20(a)."  7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1683 (3d ed. 2010)

(updated Oct. 2020).

The joinder of claims in a single action is governed by Rule 20 of the Federal Rules of Civil Procedure, which provides that parties "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  The permissive joinder rule is to be interpreted "to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple law suits."  *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010).  As the Supreme Court instructed, under the Federal Rules of Civil Procedure, courts entertain the "broadest possible scope of action consistent with fairness to the parties"; thus, "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

### C.  Motion to Transfer

Section 1404(a) of Title 28 provides, in pertinent part, that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  To warrant a transfer, the moving party must establish that: (1) the action could have been brought in the alternate forum; (2)

the existing forum is inconvenient; and (3) the interests of justice are better served in the alternate forum. *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005).

## III. ANALYSIS

### A. Motions to Dismiss

#### 1. *Stone Creek-Colorado and Mikhail Kaminski's Motion to Dismiss*

The Court must first consider which state's law applies in this dispute. The promissory note states, "[t]his Note shall be governed by and construed in accordance with the laws of the State of Minnesota," Docket No. 35-1 at 37, yet the parties' briefs cite only to Colorado law. The Court finds that this indicates that the parties do not intend for Minnesota law to apply. *See Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1212 (10th Cir. 2001) (holding that parties may waive choice-of-law arguments by failing to adequately brief them). Moreover, while the Court generally applies the law of the state chosen by the contacting parties to govern their rights and duties, if the chosen state has no relationship to the parties or the transaction, and there is no reasonable basis for the parties' choice, the Court applies Colorado's choice-of-law rules. *Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1202–03 (D. Colo. 2012); *see also* Restatement (Second) of Conflict of Laws § 187(2); *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994). Here, the Court finds Minnesota to have minimal relationship to the parties and the transaction. Minnesota appears to have been chosen because Mr. Kaminski is a Minnesota citizen. *See* Docket No. 1 at 3, ¶ 17. Because the parties cite only to Colorado law and appear to

intend for Colorado law to govern their dispute, the Court will apply Colorado law to each of plaintiff's claims.

### a. Alter Ego – Piercing the Corporate Veil (First Claim for Relief – Against SCC and Mr. Kaminski)

Plaintiff argues that SCC and Mr. Kaminski have "disregarded the corporate structure of SCC" and have made SCC "a mere instrumentality for the transaction of [Mr.] Kaminski's own affairs."  Docket No. 35 at 7, ¶ 37.  Plaintiff further alleges that there is "such a unity of interest and ownership" that the "separate personalities" of SCC and Mr. Kaminski did not exist because SCC is "merely a shell."  *Id.*, ¶ 38.  "Piercing the corporate veil," however, "is not itself an independent [] cause of action, but rather is a means of imposing liability on an underlying cause of action."  *Peacock v. Thomas*, 516 U.S. 359, 349 (1996).  The Court thus does not consider plaintiff's arguments that the Court should ignore the corporate form of SCC to be a separate claim for relief.  The Court will, however, determine whether plaintiff's allegations that Mr. Kaminski is an alter ego of SCC are sufficient given that alter ego liability appears to be the basis for several other claims against Mr. Kaminski.

Before piercing a corporation's veil of limited liability, the Court must make a three-part inquiry.  *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006).  All three prongs of the analysis must be satisfied.  *Id.*  The paramount goal of piercing the corporate veil is to achieve an equitable result.  *Id.*; *Water, Waste & Land, Inc. v. Lanham*, 955 P.2d 997, 1004 (Colo. 1998); *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo. App. 2001).

First, the Court must determine whether the corporate entity is the "alter ego" of

the person or entity in issue.  *Id.*  Under Colorado law, "[a]n alter ego relationship exists when the corporation is a 'mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist.'"  *Phillips*, 139 P.3d at 644 (quoting *Krystkowiak v. W.O. Brisben Co., Inc.*, 90 P.3d 859, 867 n.7 (Colo. 2004)). To determine alter ego status, courts consider whether (1) the corporation is operated as a distinct business entity; (2) funds and assets have been commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for non-corporate purposes.  *Id.* (citing *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003)).  This inquiry looks to the specific facts of each case; not all of the listed factors need to be shown in order to establish alter ego status.  *See Great Neck*, 37 P.3d at 490.  The second prong of the veil-piercing inquiry looks to whether justice requires recognizing the substance of the relationship over the form of the relationship because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim."  *Phillips*, 139 P.3d at 644; *Reader v. Dertina & Assocs. Mktg., Inc.*, 693 P.2d 398, 399 (Colo. App. 1984) (veil piercing applies "where the corporate entity has been used to defeat public convenience, or to justify or protect wrong, fraud, or crime, or in other similar situations where equity requires").  The final prong of the veil-piercing inquiry considers "whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the

9

acts of the business entity." *Phillips*, 139 P.3d at 644 (citing *Water, Waste & Land, Inc.*, 955 P.2d at 1004); *see also Great Neck*, 37 P.3d at 490 ("Piercing the corporate veil is an equitable remedy, requiring balancing of the equities in each particular case.").  "A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met." *Phillips*, 139 P.3d at 644.  Plaintiff has failed to allege factual support for any of the prongs.

As to the first prong, whether SCC was a "mere instrumentality" of Mr. Kaminski, plaintiff has alleged no facts that funds and assets between the two have been commingled, that adequate corporate records were not maintained, that legal formalities were disregarded, or that corporate assets were used for non-corporate purposes.  *See Phillips*, 139 P.3d at 644.  While the facts allege that Mr. Kaminski is the sole member of SCC and that he signed the purchase agreement for K Capital, Docket No. 35 at 3, ¶¶ 10, 13; Docket No. 35-1 at 28, this is not fraudulent or improper – rather, it is common in a single-member LLC – and unity of ownership is but one non-exclusive factor that the Court considers.  The fact that SCC was created to facilitate the purchase of the property and that SCC and Mr. Kaminski shared an attorney, Docket No. 35 at 3–4, ¶¶ 13, 17, are also insufficient to plausibly show fraud or that SCC was an alter ego of Mr. Kaminski.  While plaintiff claims that the facts that it was Mr. Kaminski who provided excuses for late payment, *id.* at 5–6, ¶¶ 25–26, and who signed the promissory note, Docket No. 35-1 at 39, those actions are also reasonable and common in either single-member LLCs or where the member in question is also the LLC's agent or manager.  There is no requirement that an LLC hire somebody other

than its sole member to be its manager and to conduct its affairs.[2]

Moreover, plaintiff claims that Mr. Kaminski did not maintain sufficient money in SCC's accounts to cover its obligations to plaintiff, as Mr. Kaminski repeatedly failed to make monthly payments to plaintiff, took a loan from Prescient, failed to make its final payment, and explained that he was attempting to refinance in order to pay off the note. Docket No. 35 at 5–6, ¶¶ 25–26, 28, 31, 33.  But, even if true, these allegations at best show that SCC was under-capitalized, which is but one of the non-dispositive factors in *Phillips*.  *See* 139 P.3d at 644.  Plaintiff's other allegations are similarly insufficient.  The fact that SCC was created approximately six weeks after the purchase agreement was signed and less than two weeks before closing, Docket No. 35 at 3, ¶¶ 9, 11–12, indicates only that SCC's creation was possibly related to the purchase of the property, but this common practice, without more, is not evidence that SCC was a corporate fiction for Mr. Kaminski.

Plaintiff fares no better as to the second prong of the veil-piercing inquiry, whether justice requires recognizing the substance of the relationship over the form of the relationship because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim."  *Phillips*, 139 P.3d at 644.  The facts alleged in the amended complaint suggest that plaintiff was aware that SCC was an LLC.  There are no well-pled allegations that suggest that SCC's form of organization was being used by Mr. Kaminski for an improper purpose.

---

[2] Rather, if anything, it was plaintiff that disregarded observance of the corporate form, as it repeatedly signed documents as "Stone Creek Business Center Ltd.," *see, e.g.*, Docket No. 37-1 at 21, *id.* at 28–32, despite its purported existence as a limited liability limited partnership.  *See, e.g.*, Docket No. 1-1 at 4.

Plaintiff also fails to allege sufficient facts to plausibly establish the final prong, which is that "an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." *Phillips*, 139 P.3d at 644. The facts pled are insufficient to establish Mr. Kaminski's assets and whether he might be able to compensate plaintiff for its alleged damages. As such, plaintiff has not shown that, even if it were able to show the first two prongs, an equitable result would be achieved by holding Mr. Kaminski liable. Thus, the Court finds that plaintiff has not pled sufficient facts to plausibly state that the corporate veil of SCC should be pierced and that Mr. Kaminski should also be liable to plaintiff.

### b. Breach of Contract (Second Claim for Relief – Against SCC and Mr. Kaminski)

Plaintiff argues that, while SCC and Mr. Kaminski provided a secured promissory note to plaintiff for $1,140,000, they failed to make the monthly payments under the note and are in default. *Id.* at 8, ¶¶ 42, 44–45. Plaintiff alleges that it performed its part of the note and contract and satisfied all conditions precedent to suit. *Id.*, ¶¶ 46–47.

The elements of a breach of contract are (1) the existence of a binding agreement; (2) plaintiff's performance of its obligations or some justification for its non-performance; (3) defendant's failure to perform its obligations; and (4) damages resulting therefrom. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

SCC and Mr. Kaminski do not move to dismiss the breach of contract claim with respect to SCC, but rather argue only that plaintiff has not sufficiently pled the required elements to make out a claim for breach of contract against Mr. Kaminski because

12

plaintiff has not shown that Mr. Kaminski was a party or signatory to the note. Docket No. 37 at 6–7. While plaintiff alleges that Mr. Kaminski signed the note, Docket No. 35 at 8, ¶ 42, as discussed with respect to plaintiff's first claim, Mr. Kaminski signed the note as SCC's manager. *See* Docket No. 37-1 at 59, 64. Because plaintiff has not sufficiently pled that SCC is an alter ego of Mr. Kaminski, plaintiff has not made a plausible claim for breach of contract against Mr. Kaminski.

### c. Fraud and Misrepresentation (Third Claim for Relief – Against SCC and Mr. Kaminski)

Plaintiff next argues that SCC and Mr. Kaminski made false representations regarding Mr. Kaminski's identity and SCC and Mr. Kaminski's "ability to meet its financial obligations under the Note, which induced Plaintiff to sell the Property to SCC and [Mr.] Kaminski" and that Mr. Kaminski "concealed his identity as a principal of multiple failed business entities." *Id.*, ¶¶ 51–52. Plaintiff further argues that (i) the concealment of these facts was material; (ii) SCC and Mr. Kaminski knew that their representations were false and that plaintiff would rely on these representations; and (iii) plaintiff did rely on these representations and that this reliance was justified. *Id.*, ¶¶ 53–57.

The elements of a claim for intentional misrepresentation are as follows: "[1] a false representation of a material fact; [2] the party knew such a representation was false; [3] the party who the representation was made to did not know of its falsity, and; [4] the representation was made with an intent that it be acted upon, and results in damages." *Shaw v. 17 West Mill St., LLC*, 307 P.3d 1046, 1050 n.5 (Colo. 2013). Rule 9(b) of the Federal Rules of Civil Procedure requires that, in a pleading alleging fraud,

the circumstances constituting fraud or mistake must be stated with particularity.  *See*

*Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994) (holding that Rule 9(b) applies to

common law fraud claims brought in federal court); *Tal v. Hogan*, 453 F.3d 1244, 1263

(10th Cir. 2006).  A complaint alleging fraud must "set forth the time, place and contents

of the false representation, the identity of the party making the false statements and the

consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.

2000) (citing *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

     SCC and Mr. Kaminski argue that plaintiff's allegations are not sufficiently

particular to meet the pleading requirements under Rule 9(b).  They contend that

plaintiff did not set forth the time, place, and contents of the false representation, the

identity of the party making the false statements and the consequences.  Docket No. 37

at 7.  The Court agrees.  "Rule 9(b)'s purpose is to afford defendant fair notice of

plaintiff's claims and the factual ground upon which they are based."  *Koch*, 203 F.3d at

1236.

     Plaintiff alleges that SCC and Mr. Kaminski misrepresented their ability to meet

their financial obligations and that Mr. Kaminski concealed his failed business career,

which plaintiff justifiably relied upon in selling the property.  Docket No. 35 at 9.

Plaintiff, however, provides no allegations with particularity as to when, how, and where

it was misled.  Plaintiff alleges that SCC and Mr. Kaminski "made false representations

regarding [Mr.] Kaminski's identity and SCC and [Mr.] Kaminski's ability to meet its

financial obligations."  *Id.*, ¶ 51.  Yet plaintiff has not alleged with any particularity any

facts about this misrepresentation.  Plaintiff has not specifically stated when or where

14

facts about SCC or Mr. Kaminski were misrepresented, or what SCC or Mr. Kaminski stated that was a misrepresentation.

Plaintiff also alleges that Mr. Kaminski concealed his failed business career.  *Id.*, ¶ 52.  For instance, plaintiff alleges that Mr. Kaminski "concealed his identity as principal of multiple failed business entities" that "are currently and have previously been defendants in multiple lawsuits involving financial claims across several jurisdictions."  *Id.*  Several courts have held that the particularity requirements of Rule 9(b) cannot be strictly applied in concealment cases because an omission often cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.  *See, e.g.*, *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 799 (D. Md. 2002); *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 867, 875 (N. D. Ill. 1989) (superseded by statute on other grounds); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997).  Nevertheless, courts that have considered a less rigid application of Rule 9(b) still apply the rule to test the sufficiency of a plaintiff's allegations.  *See, e.g.*, *In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 2009 WL 2780258, at *3 n.1 (D. Kan. Sept. 1, 2009) ("The Court agrees that Rule 9(b) cannot be rigidly applied to the alleged omissions in this case.  Even so, the allegations of fraudulent omissions here do not satisfy the particularity requirements of Rule 9(b).").

The Court finds that plaintiff has not met its burden on this claim.  Even if the Court were to apply relaxed pleading standards, and instead consider plaintiff's fraudulent omission allegations against the usual plausibility standard, the Court would

find that plaintiff has failed to allege sufficient facts that SCC and Mr. Kaminski intentionally made misrepresentations to plaintiff.  Plaintiff seems to concede its shortcomings, as it states in reply that it intends to "utilize discovery to provide further specificity with respect to Defendant Kaminski's exact statements and representations." Docket No. 45 at 4.  Such an endeavor, however, would defeat the purpose of Rule 9(b)'s heightened standards.  The Court will therefore grant SCC and Mr. Kaminski's motion with respect to plaintiff's third claim.

### d.  Breach of the Covenant of Good Faith and Fair Dealing (Fourth Claim for Relief – Against SCC and Mr. Kaminski)

Plaintiff alleges that the parties agreed in the purchase contract that SCC and Mr. Kaminski would pay a portion of the purchase price by satisfying the terms of the promissory note in one year and that the note would be secured by a security interest in the property itself.  Docket No. 35 at 10, ¶¶ 61–62.  When SCC and Mr. Kaminski presented a note with a fundamentally altered term, which "allowed SCC and Mr. Kaminski to project the appearance to future creditors that the Property was unencumbered by the Note," they were then able to grant "another note and deed of trust to Prescient . . . in the amount of $3,025,000, thus substantially overleveraging the Property."  *Id.*, ¶¶ 63–64.  This course of dealing was "inconsistent with Plaintiff's reasonable expectations under the Contract and a violation of the implied covenant of good faith and fair dealing."  *Id.*, ¶ 65.

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing,"  *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), intended to "ensure that a party is not deprived of the fruits

16

of a contract by the arbitrary or unreasonable actions of the other party." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1104 (10th Cir. 2003). This duty "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco*, 908 P.2d at 498. "A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would exercise its discretion to determine open terms under a contract." *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007). The implied covenant cannot, however, be used to impose obligations that conflict with the express terms of the agreement or to "inject substantive terms into the contract." *Id.*

SCC and Mr. Kaminski argue that plaintiff's claim for breach of the covenant of good faith and fair dealing should be dismissed because plaintiff "does not allege that, in forming the contract, either party retained any discretion in setting or controlling the terms of contractual performance, as is required to sufficiently plead the claim." Docket No. 37 at 8. Further, SCC and Mr. Kaminski argue that plaintiff does not plead that Mr. Kaminski was a party or signatory to the note. *Id.* at 7–8. The Court finds that, while plaintiff insists that the note provided SCC and Mr. Kaminski "with discretion regarding their performance under the Note throughout the one-year term" in the "manner in which they carried out their payment obligations," Docket No. 45 at 5, plaintiff alleges no facts that plausibly show such discretion. Rather, the note provides plaintiff, as lender, the "option" to exercise a remedy in the event of default and the option to sue SCC, as borrower, in Minnesota. Docket No. 35-1 at 35, 36. While plaintiff may believe that

SCC and Mr. Kaminski fundamentally changed the terms of the note, plaintiff does not allege that either SCC or Mr. Kaminski had discretion to do so.  The Court will therefore dismiss plaintiff's fourth claim for relief.

### e.  Unjust Enrichment and Promissory Estoppel (Fifth and Eighth Claims for Relief – Against SCC and Mr. Kaminski)

Plaintiff's fifth and eighth claims for relief are for unjust enrichment and promissory estoppel, respectively.  The Court considers these claims together because certain of SCC and Mr. Kaminski's arguments for dismissal overlap.

As to the unjust enrichment claim, plaintiff alleges that SCC and Mr. Kaminski received a benefit "in the form of possession, ownership[,] and equity in the Property" at plaintiff's expense and that it would be unjust for SCC or Mr. Kaminski to retain such an interest without "commensurate compensation" to plaintiff.  Docket No. 35 at 10–11, ¶¶ 68–70.  As to the promissory estoppel claim, plaintiff alleges that SCC and Mr. Kaminski promised plaintiff, both verbally and in writing, to pay the note in full, knowing that Prescient may move to take title to the property, thereby jeopardizing plaintiff's collateral.  *Id.* at 14, ¶¶ 90–91.  Further, plaintiff alleges that SCC and Mr. Kaminski reasonably should have expected that its promises to pay would "induce action or forbearance" by plaintiff and that plaintiff reasonably relied on these promises to its detriment.  *Id.*, ¶¶ 92–93.  Plaintiff concedes that it may not be able to recover for both unjust enrichment and promissory estoppel but explains that it has pled these claims in the alternative.  Docket No. 45 at 6.

To state a claim for unjust enrichment in Colorado, a plaintiff must show that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that

would make it unjust for defendant to retain the benefit without paying." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). "Unjust enrichment is a claim in quasi-contract based on principles of restitution." *W. Ridge Grp., LLC v. First Trust Co. of Onaga*, 414 Fed. App'x. 112, 120 (10th Cir. 2011) (unpublished) (citing *DCB Constr. Co. v. Central City Devp. Co.*, 965 P.2d 115, 118 (Colo. 1998) (en banc)).

To state a claim for promissory estoppel in Colorado, a plaintiff must show "(1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) action or forbearance induced by that promise; and (3) the existence of circumstances such that injustice can be avoided only by enforcement of the promise." *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995); see also Restatement (Second) of Contracts § 90.

As to plaintiff's unjust enrichment claim, SCC and Mr. Kaminski argue that plaintiff's allegations that SCC and Mr. Kaminski received a benefit at plaintiff's expense provide no support for plaintiff's claim. Docket No. 37 at 9. The Court disagrees. As stated above, plaintiff alleges that SCC and Mr. Kaminski received the benefit of "possession, ownership[,] and equity in the Property." Docket No. 35 at 10–11, ¶ 68. Plaintiff has therefore identified the benefit. In addition, SCC and Mr. Kaminski argue that plaintiff alleges that SCC and Mr. Kaminski received a benefit based on executing the sales contract but that this "reliance on contractual privity" is fatal to plaintiff's claim. Docket No. 37 at 9. This argument is misplaced, however, as plaintiff's unjust enrichment claim does not mention the contract or rely on the contract in any way. Thus, plaintiff's fifth claim survives SCC and Mr. Kaminski's motion to dismiss.

19

As to plaintiff's promissory estoppel claim, SCC and Mr. Kaminski argue only that, "[a]s Plaintiff relies on enforceable contracts, there is no claim for relief."  Docket No. 37 at 12.  SCC and Mr. Kaminski rely on *Bellairs v. Coors Brewing Co.*, in which the court held that "promissory estoppel is available as a remedy only in the absence of an otherwise enforceable contract."  907 F. Supp. 1448, 1455 (D. Colo. 1995).  Presumably, SCC and Mr. Kaminski argue that, because of the promissory note, plaintiff cannot bring a promissory estoppel claim.  However, most of plaintiff's allegations deal with "subsequent promises" made by SCC and Mr. Kaminski.  *See* Docket No. 35 at 14, ¶¶ 90–92.

Moreover, while plaintiff acknowledges that it cannot recover on both the unjust enrichment and promissory estoppel claims, the Court agrees with plaintiff that it may plead these two claims in the alternative.  The Federal Rules of Civil Procedure allow a party to include alternative or inconsistent claims in its complaint.  Fed. R. Civ. P. 8(d)(2) and (3).  As a result, a party may plead a breach of contract claim and a promissory estoppel claim based on the same conduct or document in the alternative.  *Clark v. Green Tree Serv'g LLC*, 69 F. Supp. 3d 1203, 1222 (D. Colo. 2014).  Similarly, a party may plead breach of contract and unjust enrichment claims in the alternative.  *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Assn.*, No. 11-cv-00970-PAB-MEH, 2013 WL 6925132, at *3 (D. Colo. Dec. 13, 2013).  However, where an enforceable contract exists, a party cannot ultimately recover on a theory of promissory estoppel.  *Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, LLC*, 176 P.3d 737, 741 (Colo. 2007).  And, save for two exceptions not relevant to this discussion, a party cannot

recover for unjust enrichment where an express contract covering the same subject matter exists. *Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Therefore, contrary to SCC and Mr. Kaminski's argument, inconsistent claims – for breach of contract on the one hand and unjust enrichment or promissory estoppel on the other hand – may be pled in the alternative. *See, e.g.*, *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1092 (D. Colo. 2013) ("[I]t is also true that a party is permitted to pursue a claim for breach of contract and promissory estoppel in the alternative."); *Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pacific Colorado, LLC*, 11-cv-03333-WYD-KLM, 2012 WL 2190852, at *5 (D. Colo. June 14, 2012) (permitting plaintiff to plead breach of contract and unjust enrichment claims in the alternative).

Therefore, as in *United Water & Sanitation Dist. v. Geo-Con, Inc.*, the Court finds that "dismissal of these claims is not required" because the Court finds that plaintiff's "claims for promissory estoppel and unjust enrichment are both adequately pled." *See* Case No.18-cv-03241-PAB-SKC, 2020 WL 5629059, at *4–*5 (D. Colo. Sept. 21, 2020).

### f. Declaratory Judgment (Sixth and Seventh Claims for Relief – Against SCC, Mr. Kaminski, and Prescient)

Plaintiff alleges that SCC and Mr. Kaminski "would profit by a wrong and would be unjustly enriched if SCC were permitted to keep the Property without imposing the encumbrance contemplated by the Note." Docket No. 35 at 12, ¶ 76. Plaintiff "asserts a constructive trust" dating back to the closing of the sale, September 12, 2018, *id.*, ¶ 77–78, which is before the deed of trust that Prescient recorded on March 19, 2019.

21

As such, plaintiff requests a "declaration . . . granting it a constructive trust" against the property "first in priority" and "in the amount of the unpaid portion of the purchase price, plus interest, costs, and attorney's fees." *Id.*, ¶ 79.  In addition, plaintiff alleges that it filed a lis pendens with respect to this lawsuit on March 10, 2020, and Prescient recorded a deed in lieu of foreclosure on the property on April 14, 2020. *Id.* at 12–13, ¶¶ 81, 84.

Plaintiff asserts an equitable lien relating back to the closing of the property on September 12, 2018 and asserts that this equitable lien is prior to Prescient's deed of trust, which was recorded on March 19, 2019. *Id.* at 13, ¶¶ 86–87.  Therefore, plaintiff requests a declaration granting it an equitable lien first in priority against the property in the amount of the unpaid portion of the purchase price, plus interest, costs, and attorney's fees. *Id.* at 13–14, ¶ 88.[3]

"Under Colorado law, a constructive trust is a judicially created equitable remedy applied to prevent unjust enrichment." *In re Foster*, 275 F.3d 924, 926 (10th Cir. 2001) (citing *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986)).  "The purpose of imposing a constructive trust is to prevent the defendant from being unjustly enriched at the plaintiff's expense." *Am. Web, Inc. v. Flom Corp.*, No. 11-cv-02444-WYD-KMT, 2013 WL 1222059, at *6 (D. Colo. Mar. 25, 2013).  "The successful plaintiff in a constructive trust action wins an *in personam* order that requires the defendant, the

---

[3] Although plaintiff seeks a declaratory judgment pursuant to Colorado's Uniform Declaratory Judgments Act, Colo. Rev. Stat. § 13-51-101 *et seq.*, "federal law determines whether a district court may properly enter a declaratory judgment" in a diversity case. *Addison Ins. Co. v. Maynard*, 08-cv-00054-WDM-BNB, 2008 WL 2079143, at *2 (D. Colo. May 15, 2008); *Bolles v. Principal Life Ins. Co.*, 339 F. Supp. 3d 1195, 1197 n.4 (D. Colo. 2018).

constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary of the trust." *Allen*, 724 P.2d at 657.  Under Colorado law, a constructive trust is an equitable remedy that may be imposed on a party who has been unjustly enriched by another. *Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009); *Lawry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008).

SCC and Mr. Kaminski insist plaintiff's two declaratory judgment claims are "camouflage to replead" its constructive trust and equitable lien claims, which actually are not claims for relief but rather remedies.  Docket No. 37 at 10–11 (citing *Clyne v. Walters*, No. 08-cv-01646-MSK-CBS, 2009 WL 2982842, at *3 (D. Colo. Sept. 16, 2009) ("Because a constructive trust is a remedy, not a claim, the Court does not construe Ms. Clyne's Amended Complaint to raise an independent 'claim' for imposition of a constructive trust . . . . Because the Court does not recognize Ms. Clyne as asserting a 'claim' for a constructive trust, there is nothing to dismiss with regard to this issue."); *Morally v. Marabella Partners, LLC*, No. 05-cv-02080-LTB-PAC, 2006 WL 2038388, at *8 (D. Colo. July 19, 2006) ("[T]o the extent that Plaintiffs seek relief pursuant to claims for constructive trust and equitable lien, such legal theories do not constitute a separate causes of action; rather, they are legal forms of equitable remedy.")).

To this, plaintiff merely states, "[t]his conclusory statement is incorrect."  Docket No. 45 at 7.  Plaintiff does not provide any authority to the contrary, however.  The Court dismisses plaintiff's sixth and seventh claims because, while they are pled as claims seeking declaratory judgments, in actuality "they assert legal theories not

cognizable as a matter of law."  *Morally*,  2006 WL 2038388, at *8.

### g.  Bad Check (Ninth Claim for Relief – Against SCC)

In its second amended complaint, plaintiff alleges that when, on April 22, 2019, SCC provided it a check for $5,000 for one month of its interest-only payments under the note, the check was later returned on May 1, 2019 for insufficient funds.  Docket No. 35 at 14–15, ¶ 96–97.  As a result, plaintiff alleges that it is entitled to recover damages, costs, and attorney's fees.  *Id.* at 15, ¶ 98.  Plaintiff references Colorado's bad check law, which provides that anyone who attempts to satisfy a payment obligation by means of a check that is not paid on presentment is liable to the check's holder for the face value of the check plus actual damages.  Colo. Rev. Stat. § 13-21-109(1).

SCC and Mr. Kaminski argue that the bad check statute has a notice requirement and that, because plaintiff did not plead compliance with the notice requirement, plaintiff's claim must fail.  Docket No. 37 at 12–13.  SCC and Mr. Kaminski are mistaken.  The notice requirement states that, if notice of nonpayment is provided and the amount due is not paid within fifteen days, the holder is entitled to triple the check's face value.  Colo. Rev. Stat. § 13-21-109(2); *see also Evans v. Loveland Auto. Investments, Inc.*, No. 13-cv-2415-WJM-KMT, 2015 WL 161295, at *4 (D. Colo. Jan. 13, 2015).  Plaintiff does not ask for payment of three times the amount of the bad check, so it was not required to plead the notice requirement of the second section of the statute.  The Court finds that plaintiff's ninth claim is properly pled.

### 2.  *Prescient Capital's Motion to Dismiss*

24

Prescient moves to dismiss the two claims that plaintiff has brought against it, i.e., claims six and seven for a declaratory judgment granting plaintiff a constructive trust and an equitable lien, respectively.  Docket No. 41.  Prescient argues that plaintiff has "not alleged any controversy (much less an actual controversy) exists between it and Prescient.  [Plaintiff] has not alleged that Prescient was involved in the loan transaction, a party to any of the contract identified in [plaintiff's second amended complaint] or a participant in any of the conduct it alleges to be wrongful."  *Id.* at 4.  Rather, plaintiff "has simply alleged that Prescient made a loan to SCC secured by the deed of trust and that 'on information and belief' Prescient knew of SCC's debt obligations to [plaintiff] at the time Prescient made its loan."  *Id.*  Prescient cites *Clyne* and *Morally* for the proposition that a constructive trust and an equitable lien are remedies not claims for relief.  *Id.* at 5–6.

The Court dismisses claims six and seven against Prescient for the same reasons that it dismissed those claims against SCC and Mr. Kaminski.

### B.  Motion to Sever

In its motion to dismiss, SCC and Mr. Kaminski ask the Court to sever both CBRE and Prescient.  Docket No. 37 at 13–14.  As to CBRE, SCC and Mr. Kaminski argue that the "causes of action against [] CBRE arise out of the listing agreement between [plaintiff] and CBRE to which [] SCC and [Mr.] Kaminski are not a party or third-party beneficiary or obligor."  *Id.* at 13.  They also argue that CBRE is not a party to the contract between plaintiff and SCC and Mr. Kaminski.  *Id.*  Rather, they claim that CBRE has been misjoined because the supporting facts "lack 'similarity in the factual

background of [the] claim.'" *Id.* at 14 (quoting *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 842 (9th Cir. 2000) (Reinhardt, J., concurring)).

Plaintiff asserts two claims against CBRE. First, plaintiff alleges that CBRE breached its contact with plaintiff when it failed to advise plaintiff regarding the transaction and to promote plaintiff's interests with its utmost good faith and loyalty. Docket No. 35 at 16, ¶ 104. Second, plaintiff alleges that CBRE was unjustly enriched when it received the benefit of the commission upon the closing of the property's sale. *Id.* at 17, ¶ 109–11. Plaintiff argues that the facts establishing claims against SCC, Mr. Kaminski, and CBRE are "intertwined" and arise from the "same series of transactions or occurrences," Docket No. 45 at 9 (quoting Fed. R. Civ. P. 20(a)(1)(A)), with a "very 'definite logical relationship' and a 'question of law or fact common to all defendants will arise in the action.'" *Id.* (quoting *Bautista*, 216 F.3d at 843). As support, plaintiff alleges that CBRE communicated directly with Mr. Kaminski "throughout the course of the transaction and negotiated the terms of the deal on [plaintiff's] behalf." *Id.* Furthermore, joinder promotes "judicial efficiency" and avoids prejudice such that, in "any one of the defendants' absence, complete relief could not be provided." *Id.*[4]

The Court agrees with plaintiff. The rule for joinder is that "all logically related events entitling a person to institute a legal action against another typically are regarded as comprising a transaction or occurrence." 7 Wright, et al., *Fed. Prac.* § 1653.

---

[4] CBRE states that it "does not take a position with respect to SCC and [Mr.] Kaminski's arguments to dismiss [plaintiff's] claims against them, nor does it oppose SCC and [Mr.] Kaminski's request to sever CBRE from the litigation should the Court deem it appropriate to transfer the case against SCC and [Mr.] Kaminski to Minnesota." Docket No. 43 at 3.

Furthermore, the permissive joinder rule is to be construed to prevent multiple lawsuits, *Cooper*, 266 F.R.D. at 88, and courts are to entertain the "broadest possible scope of action consistent with fairness to the parties"; thus, "joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am.*, 383 U.S. at 724.  The Court finds, therefore, that joinder of CBRE was appropriate.

The Court need not address SCC and Mr. Kaminski's argument to sever Prescient from the action, Docket No. 37 at 14, because the Court has already dismissed the claims against Prescient.

### C.  Motion to Transfer

SCC and Mr. Kaminski argue that plaintiff consented to jurisdiction in federal or state court in Hennepin County, Minnesota through Article 15 ("Consent to Jurisdiction; Waiver; Other Forums") of the promissory note.  *Id.* at 14 (citing Docket No. 35-1 at 36). While plaintiff "requested that Article 15 be changed . . . [n]o such amendment was made."  *Id.*  Plaintiff claims that the jurisdiction clause of the promissory note was permissive, not mandatory.  Docket No. 45 at 9–10.  The clause states, "[a]ny suit . . . arising out of or relating to this Note or any other Loan Document . . . **can** be brought by [plaintiff] in the applicable federal district court or in the state circuit court have jurisdiction for Hennepin County, State of Minnesota."  *Id.* at 10 (quoting Docket No. 35-1 at 36).  The Court agrees with plaintiff that the jurisdictional clause of the promissory note was permissive, not mandatory.

SCC and Mr. Kaminski also argue that plaintiff, CBRE, and Prescient conducted business with SCC, a "domiciliary of Minnesota" and that they therefore "subjected

themselves to the personal jurisdiction of the State of Minnesota," which has general personal jurisdiction over SCC and Mr. Kaminski.  Docket No. 37 at 14–15.  Therefore, SCC and Mr. Kaminski argue that venue is proper in the federal district court of Minnesota.  *Id.* at 15.  Plaintiff and CBRE disagree.  Docket Nos. 45, 43.  CBRE argues that SCC and Mr. Kaminski, as the parties moving for transfer, "bear the burden of proving that '(1) the action could have been brought in the alternate forum, (2) the existing forum is inconvenient, and (3) the interests of justice are better served in the alternate forum.'"  Docket No. 43 at 6 (quoting *Wolf*, 399 F. Supp. 2d at 1166).  As a prerequisite to transfer, the movant must show that the alternate venue is proper with respect to every defendant and each claim, and "[a]n action against multiple defendants may not be transferred if one or more of the defendants is not subject to suit in the transferee forum even though the transferee forum may be proper as to other defendants."  *Id.*  (citing 1A *Fed. Proc.*, L. Ed. § 1:767); *see also Sec. State Bank v. Baty*, 439 F.2d 910, 912 (10th Cir. 1971).  The Court finds transfer inappropriate.  Neither SCC nor Mr. Kaminski has shown, or attempted to show, that this Court is inconvenient or that the interests of justice are better served in the District of Minnesota.  The Court will therefore deny SCC and Mr. Kaminski's motion to transfer.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Stone Creek-Colorado, LLC and Mikhail Kaminski's Partial Motion to Dismiss, or in the Alternative to Sever Pursuant to F.R.C.P. §21 and Transfer Venue [Docket No. 37] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Stone Creek Business Center, LLLP's first, third, fourth, sixth, and seventh claims for relief against Stone Creek-Colorado, LLC and Mikhail Kaminksi, are dismissed with prejudice.  It is further

**ORDERED** that Stone Creek Business Center, LLLP's second claim for relief is **DISMISSED** with prejudice as to Mr. Kaminski.  It is further

**ORDERED** that defendants Stone Creek-Colorado, LLC and Mikhail Kaminski's motion to sever is denied.  It is further

**ORDERED** that defendants Stone Creek-Colorado, LLC and Mikhail Kaminski's motion to transfer venue is denied.  It is further

**ORDERED** that Prescient Capital Partners, Ltd.'s Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 41] is granted.  It is further

**ORDERED** that Stone Creek Business Center, LLLP's sixth and seventh claims for relief against Prescient Capital Partners are dismissed with prejudice.

DATED March 9, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge